UPTOWN NATIONAL BANK OF CHICAGO, Plaintiff-Appellant, v. EVA STRAMER, Defendant-Appellee (Foodservice Imports, Inc., *et al.*, Defendants).

First District (3rd Division)   No. 1—90—2500

Opinion filed August 28, 1991.

David F. Holland, of Des Plaines, for appellant.

Ashman & Associates, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Uptown National Bank of Chicago, a national banking association, appeals from the dismissal of count IV of its second amended complaint, which was brought against defendants Foodservice Imports, Inc., Max Stramer, and Eva Stramer in connection with defaulted loans. Plaintiff argues that its complaint sufficiently stated a cause of action for an equitable lien against Eva Stramer.

Plaintiff's complaint alleged the following facts. In January 1983, Max Stramer formed Foodservice and obtained loans from plaintiff by using financing statements and other forms of representations that falsely and fraudulently misrepresented his and Foodservice's assets, liabilities, and income. In March 1985, Max Stramer informed plaintiff of his inability to make interest payments due on the loans and requested an extension of time. The Stramers furnished plaintiff with a financial statement that showed a substantial net worth in excess of all indebtedness and included Illinois and Florida residences that had been financed by plaintiff. But the Stramers did not have some of the assets claimed in the financial statement.

A loan agreement was entered into for the renewal of two loans to Max Stramer and one loan to Foodservice. As a condition to extend the existing credits, Eva Stramer was required to be a co-borrower on the notes of Max Stramer and a guarantor on the notes of Foodservice. The agreement stated in part:

> "3. Max Stramer and Eva Stramer and each of them will not sell or otherwise dispose of any of their personal assets nor allow any liens to be placed thereon without the express permission of Lender.
>
> * * *
>
> 8. Max Stramer and Eva Stramer hereby represent and warrant that there has been no material change in their financial condition from the condition disclosed in their personal financial statement dated March 31, 1985, which said statement both Max Stramer and Eva Stramer certify to be true, complete and correct."

Max Stramer signed once as the president of Foodservice and once as an individual, and Eva Stramer signed as an individual.

Max Stramer, as president of Foodservice, signed a note for $299,732.55, which stated in part:

> "As security for the payment of this Note and for the payment and performance of all other existing and future indebt-

edness, obligations and liabilities, direct or contingent, of the Undersigned, or any of them, to the Lender, the Undersigned hereby pledges, assigns, transfers and delivers and grants to Lender a security interest in the following property and in all other property of the Undersigned now or hereafter in the possession or control of the Lender (herein called 'Collateral') and in all proceeds thereof: UCC—1 ON ALL ACCOUNTS RECEIVABLE, INVENTORY, FIXTURES AND EQUIPMENT NOW OWNED OR HEREAFTER ACQUIRED.

The Undersigned agree(s) to deliver to the Lender forthwith upon its demand, such additional Collateral as it may request from time to time should the value of the Collateral decline or should the Lender deem itself insecure."

In February 1986, about three months prior to his death, Max Stramer conveyed his interest in the real properties to Eva Stramer. In September 1989, Eva Stramer sold the Florida property and no longer had any of the sale proceeds, some of which had been applied to the mortgage on the Illinois property.

Plaintiff claimed a right to an equitable lien on the real and personal property listed in the financial statement. It alleged that Eva Stramer's sale of the Florida property and the disposal of the sale proceeds denied its right to an equitable lien. Plaintiff prayed for findings that a substantial number of loans were obtained from plaintiff through the fraud of Max Stramer, that the loan proceeds were used to pay in part a loan "relating to" the Illinois property, and that Eva Stramer derived her title to this property from Max Stramer.

Eva Stramer's motion to dismiss count IV was granted on the basis that plaintiff failed to state a cause of action.

Uptown argues on appeal that it was entitled to an equitable lien under the loan agreement because the Stramers agreed not to dispose of their personal assets, which were additional security for the loan, and because the personal financial statement sufficiently identified the property for the purpose of creating an equitable lien.

■■ An equitable lien is the right to have property subjected to the payment of a claim. (*W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 263, 477 N.E.2d 513.) The essential elements of an equitable lien are a debt, duty, or obligation owing and a *res* to which that obligation fastens and which is identified or described with reasonable certainty. *Marbach v. Gnadl* (1966), 73 Ill. App. 2d 303, 313, 219 N.E.2d 572.

■■ Equitable liens have been imposed where contracts manifested the intent that particular property or funds be security for

debts wherever there has been a promise to convey or assign the property as security. (*E.g., Marbach*, 73 Ill. App. 2d at 315 (sellers of real estate were entitled to an equitable lien on fire insurance proceeds); *Paine/Wetzel Associates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, 528 N.E.2d 358 (real estate brokerage agreement provided that, in the event of defendant's independent sale or lease of the property, broker was granted a lien).) But if a contract expressly covered the entire subject matter and did not provide for a lien, a lien will not be inferred. *Pruitt Office Machines, Inc. v. Liberty National Bank* (1950), 341 Ill. App. 146, 149, 93 N.E.2d 104 (lessee not entitled to lien where lease provided for particular amount of damages in the case of lessor's cancellation of lease); *Bankers Trust Co. v. Chicago Title & Trust Co.* (1980), 89 Ill. App. 3d 1014, 1018, 412 N.E.2d 660 (a contract stated that whenever in a particular year the client obtained a new land loan, the attorney would immediately be paid his fees, but it did not intend to create a security interest in the loan proceeds); *Hibernian Banking Association v. Davis* (1920), 295 Ill. 537, 543-44, 129 N.E. 540 (no intention to make property security for a debt was disclosed in an agreement to apply the proceeds of the sale of land to the payment of a debt).

█ The Foodservice promissory note provided for a security interest only in Foodservice's accounts receivable, inventory, fixtures, and equipment. The Stramers' personal assets could have been included in the promissory note, but they were omitted. An equitable lien cannot be imposed under the contract because the parties did not intend these assets to be security. There was no intention contained in the loan agreement to create a security interest in any of the real or personal property of Eva Stramer.

█ Plaintiff also argues that it is entitled to an equitable lien because some of the proceeds of the loans fraudulently obtained by Max Stramer were applied to the mortgage on the Illinois property. Although plaintiff did not allege that Eva Stramer was involved with her husband in obtaining the loans, it argues that she should not be permitted to benefit from his fraud. However, there was no allegation of any fraud committed by Eva Stramer and therefore there was no unjust enrichment.

Equitable liens may be imposed in the absence of an express agreement out of considerations of fairness. (*E.g., Erickson*, 132 Ill. App. 3d at 270 (company entitled to an equitable lien for the reasonable value of the permanent improvements it made); *Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 263-64, 215 N.E.2d 839 (equitable lien on property based on contract payouts made by plaintiff for the

owners with plaintiff's money).) There is no equitable basis to impose an equitable lien on Eva Stramer's personal property; the existing personal property has no relation to the allegedly prohibited sale of the Florida real property. There is also no equitable basis to impose an equitable lien on the Illinois real property because there was no allegation that Eva Stramer had defrauded plaintiff.

The judgment of the circuit court is affirmed.

Affirmed.

RIZZI and GREIMAN, JJ., concur.