UNITED STATES FIDELITY AND GUARANTY COMPANY *et al.*, Plaintiffs-Appellees, v. OLD ORCHARD PLAZA LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.—BRUNSWICK CORPORATION, Intervenor and Plaintiff-Appellant, v. JERRY BURIN, as Receiver, *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 1—93—3385, 1—94—0998 cons.

Opinion filed October 28, 1996.—Rehearing denied November 27, 1996.

Winston & Strawn, of Chicago (Richard J. Brennan, Brian E. Neuffer, and Jack J. Crowe, of counsel), and Robert T. McNaney, of Brunswick Corporation, of Lake Forest, for appellant.

Kirkland & Ellis, of Chicago (Thomas E. Dutton, of counsel), for appellees Old Orchard Plaza Limited Partnership, LP Equity Associates Limited Partnership, and La Salle Partners Asset Management Limited Partnership.

Alan J. Mandel, Ltd., of Chicago (Alan J. Mandel, of counsel), for appellee Jerry Burin.

Sonnenschein, Nath & Rosenthal, of Chicago (Richard L. Fenton and Catherine A. Van Horn, of counsel), for appellees United States Fidelity & Guaranty Company, Fidelity & Guaranty Life Insurance Company, USF&G Realty Advisors, Inc., and Charles R. Werhane.

JUSTICE BUCKLEY delivered the opinion of the court:

This case arises out of the trial court's dismissal of intervening complaints filed by Brunswick Corporation (Brunswick) against United States Fidelity and Guaranty Company (USF&G), Jerry Burin, La Salle Partners Asset Management Limited Partnership (La Salle Partners), and a group of affiliated partnerships and corporations created and controlled by La Salle Partners (collectively, the La Salle Partner defendants). Brunswick had leased certain property owned during the term of the lease successively by each of the La Salle Partner defendants. The lease provided Brunswick with a right to vacate the premises without renewal and receive a "termination payment." Brunswick exercised this right, but before the termination payment became due, Old Orchard Plaza Limited Partnership (OOPLP), the La Salle Partners defendant that owned the property at the time, defaulted on a mortgage loan it received from USF&G, and the trial court appointed Jerry Burin as receiver of the property. Brunswick never received the termination payment.

USF&G brought an action against OOPLP, and Brunswick filed an intervenor's complaint seeking a declaratory judgment that one or more of the defendants was liable for the payment.

The trial court dismissed all but one count of Brunswick's complaint, and Brunswick appealed. Brunswick contends that the trial court erred in ruling that Brunswick failed to state claims for declaratory judgments that: (1) Brunswick has a vendor's lien enforceable against OOPLP and USF&G; (2) USF&G was a mortgagee in possession; (3) Burin adopted Brunswick's lease; (4) Burin's failure to make the termination payment was a material breach relieving Brunswick of any obligation under the lease to pay real estate taxes; and (5) the termination payment provision was a covenant running with the land.

STATEMENT OF FACTS

On December 14, 1956, the United States Steel & Carnegie Pension Fund (Fund) leased 32 acres of land and existing improvements (the property) to International Minerals & Chemical Corporation (IMC). The lease was to expire on December 20, 2023, if all options to extend it were exercised.

On September 1, 1971, Brunswick acquired the leasehold estate from IMC. On April 27, 1983, Brunswick entered into a contract to sell its leasehold estate to Equity Associates (Equity). On May 1, 1983, the sale contract was closed with the execution of a sublease (master lease) in favor of Equity. As consideration for the sale of the leasehold, Equity agreed to lease the office space Brunswick occupied at the time back to Brunswick at a below-market rate pursuant a subsublease (lease). The lease provided that Brunswick would occupy the office space through April 1993, at which point it would have the option of extending the term of the lease for five years. If Brunswick exercised this option, it would have another option to extend the lease again for five more years. When Brunswick vacated the premises, Equity would pay Brunswick a termination payment of $2 million if Brunswick exercised no options to extend, $1 million if Brunswick exercised only one option, and nothing if Brunswick exercised a second option. The lease also stated that all covenants were binding on the heirs, successors, and assigns of both parties. On May 16, 1983, both the master lease and the lease were recorded with the recorder of Cook County.

In November and December 1983, Equity and the Fund restructured the master lease and agreed that the original leasehold estate would be assigned from Brunswick to Equity. The lease (of the office space from Equity to Brunswick) remained in full force and effect.

On December 5, 1985, Equity acquired fee simple title to the property from the Fund. In 1987, Equity sold the property to LP Equity. A short time later, LP Equity sold the property to OOPLP. Equity, LP Equity, and OOPLP are affiliates created and controlled by La Salle Partners. Brunswick's complaint alleges that at all times from May 1, 1983, forward, the lease in favor of Brunswick continued in full force and effect and was adopted and accepted by each succeeding owner of the property.

Sometime prior to October 5, 1988, OOPLP sought a mortgage loan on the property from USF&G. On October 5, 1988, USF&G received a letter from its real estate consulting firm, Piedmont Realty Advisers, stating that if Brunswick vacated the premises in April 1993, Equity would be liable for the termination payment. The letter also advised that Brunswick would likely exercise its options to extend because the value of occupying the office space at a below-market rate exceeded that of the termination payment.

On November 30, 1988, Brunswick executed a letter, at USF&G's request, certifying that upon any foreclosure sale or conveyance in lieu thereof, Brunswick would recognize the purchaser as its landlord under the lease as if such purchaser were the original landlord, "provided, however, that such purchaser shall in no way be liable or responsible for any alleged default by the Landlord pertaining to any period prior to the time that the purchaser acquires actual possession or control of the Property, or any portion thereof."

On January 6, 1989, OOPLP received two mortgage loans on the property from USF&G totalling $23.5 million. On March 1, 1992, OOPLP defaulted on the mortgages by failing to pay real estate taxes, as required under the loan documents. On May 8, 1992, USF&G accelerated OOPLP's total indebtedness. On May 12, 1992, Brunswick sent Equity and La Salle Partners written notice that it intended to vacate the office space on April 30, 1993. The notice further demanded payment of $2 million upon its vacation.

On July 7, 1992, USF&G filed a complaint in the chancery division of the circuit court of Cook County against the La Salle Partner defendants alleging various fraudulent transfers of funds. The complaint sought assignment of rents and appointment of a receiver. It specifically stated that USF&G does not seek a foreclosure "at this time." On August 5, 1992, the circuit court appointed Jerry Burin as receiver, and since that date he has demanded and received rents and managed the property. Brunswick later sent letters demanding the termination payment to USF&G and Burin. All parties denied liability.

On March 8, 1993, Brunswick obtained leave to intervene and

filed an intervenor's complaint against all the La Salle Partner defendants, USF&G, and Burin. The complaint sought declaratory judgments that the termination payment provision was a covenant running with the land, that Brunswick had an equitable vendor's lien on the property for the unpaid purchase price which took priority over any mortgage liens, that Burin had implicitly adopted the lease, that the termination payment was an ordinary operating expense of receivership, and that USF&G was a mortgagee in possession.

On April 26, 1993, USF&G settled its claim against the La Salle Partner defendants and agreed to the following terms: (1) USF&G would dismiss the claim; (2) of the nine parcels constituting the property, USF&G would release its interest in parcels 1 through 6 and foreclose only on parcels 7 through 9, which contained the Brunswick office space; (3) the La Salle Partner defendants would assert no defense and consent to the foreclosure; (4) if OOPLP went into bankruptcy, it would consent to lift the automatic stay on the foreclosure; and (5) USF&G reserved indemnity and subrogation rights against the La Salle Partner defendants for the termination payments. On April 30, 1993, Brunswick vacated the premises. On July 15, 1993, USF&G filed its complaint for foreclosure of parcels 7 through 9.

On August 6, 1993, Brunswick amended its complaint to add requests for declaratory judgments that it has a vendor's lien against parcels 7 through 9, which is superior to USF&G's mortgage interest, and against parcels 1 through 6. USF&G filed a motion to dismiss for failure to state a claim. On August 25, 1993, the circuit court granted the motion, finding (1) the termination payment provision was not a covenant running with the land because it did not touch and concern the property and there was no privity between Brunswick and USF&G, (2) Brunswick was not entitled to a vendor's lien, (3) USF&G was not a mortgagee in possession, and (4) Brunswick was estopped from asserting a claim for termination payment against USF&G by its letter of November 30, 1988. On September 22, 1993, Brunswick filed a notice of appeal.

On October 5, 1993, Brunswick received an invoice from Burin demanding payment for Brunswick's alleged share of 1992 real estate taxes on the property. On December 7, 1993, Brunswick filed a second-amended complaint against the La Salle Partner defendants and Burin, containing two counts. Count I sought declaratory judgments that the La Salle Partner defendants were each personally liable for the termination payment and that Brunswick had a vendor's lien against the property. Count II sought declaratory judgments that Burin had adopted the lease and was liable for the termination pay-

ment as successor to the landlord's interest, that the termination payment was an ordinary operating expense of receivership, and that Burin's nonpayment of the termination payment was a material breach of the lease that entitled Brunswick to set off any of its further obligations.

The circuit court granted USF&G leave to intervene as defendant. On December 28 and 29, 1993, USF&G, the La Salle Partner defendants, and Burin each filed motions to dismiss Brunswick's second-amended complaint. On March 23, 1994, the circuit court granted USF&G's and Burin's motions in their entirety. The court found that Burin never adopted the lease or succeeded the landlord in interest, and that nonpayment of the termination payment did not excuse Brunswick from paying real estate taxes. With respect to the La Salle Partner defendants' motion, the circuit court granted Brunswick leave to file a third-amended complaint *instanter*, in which count I alleged a vendor's lien and count II alleged personal liability for the termination payment. The court then dismissed count I, citing its earlier ruling on the vendor's lien issue, and sustained count II.

On March 24, 1994, Brunswick filed its second notice of appeal. On May 23, 1994, this court entered an order consolidating the two appeals.

DISCUSSION

In considering a motion to dismiss, all well-pleaded facts are taken as true, and the standard of review is whether the complaint adequately states a cause of action. *McCormick v. Kruk*, 220 Ill. App. 3d 449, 451, 581 N.E.2d 73, 75 (1991). Also, any exhibits attached to the complaint constitute part of the pleading. 735 ILCS 5/2—606 (West 1994).

■ Initially, USF&G contends that Brunswick waived any claims against USF&G when it executed the November 8, 1988, letter. The relevant portion of the letter states as follows:

"Upon any foreclosure sale or conveyance in lieu thereof, *** [Brunswick] shall attorn to and recognize the purchaser of the Property, or any portion thereof as its landlord under the Lease as if such purchaser were the original landlord thereunder, provided, however, that such purchaser shall in no way be liable or responsible for any alleged default by the landlord pertaining to any period prior to the time that the purchaser acquires actual possession or control of the Property or any portion thereof."

USF&G's contention that the letter is a waiver of Brunswick's claims against USF&G is erroneous. The letter clearly states that no

*purchaser* who takes control of the property upon any *foreclosure sale* or conveyance in lieu thereof shall be liable for prior defaults of the landlord. USF&G was not a purchaser, and it did not take control of the property pursuant to a foreclosure sale. Therefore, the letter does not constitute a waiver of Brunswick's claims against USF&G.

■ Brunswick first contends that the circuit court erred in finding that it failed to state a claim for a vendor's lien in the amount of the termination payment enforceable against USF&G and the La Salle Partner defendants. A vendor's lien may arise by implication, even without any affirmative action to perfect it, where the vendor has parted with legal title to real property but has not been paid the full purchase price. *Mellon Bank, N.A. v. Midwest Bank & Trust Co.*, 265 Ill. App. 3d 859, 873, 638 N.E.2d 640, 649 (1993). However, a vendor's lien is only created where the parties intended to create one. *Mellon Bank*, 265 Ill. App. 3d at 873, 638 N.E.2d at 649. If it is manifest from the contract between the parties that no lien was intended, equity will not create one. *Mellon Bank*, 265 Ill. App. 3d at 873, 638 N.E.2d at 649.

Illinois law is clear that an intent not to create a lien is evident where a contract expressly covers the entire subject matter and does not provide for a lien. *Uptown National Bank v. Stramer*, 218 Ill. App. 3d 905, 907-08, 578 N.E.2d 1165, 1167 (1991); see also *Oppenheimer v. Szulerecki*, 297 Ill. 81, 130 N.E. 325 (1921). "[I]f the parties having expressly covered the entire subject matter[ ] have not provided for a lien, a lien will not be created by implication." *Pruitt Office Machines, Inc. v. Liberty National Bank*, 341 Ill. App. 146, 149, 93 N.E.2d 104, 105 (1950); see also *Uptown National Bank*, 218 Ill. App. 3d at 908, 578 N.E.2d at 1167 ("if a contract expressly covered the entire subject matter and did not provide for a lien, a lien will not be inferred").

■ In this case, the agreements between Brunswick and Equity each contain language indicating that no lien was intended. First, the master lease of the property from Brunswick to Equity contains a provision that the agreement is conditional upon the delivery of a title insurance policy showing that Equity would receive "good and marketable title" to the leasehold "subject to no exceptions." More importantly, the lease from Equity back to Brunswick contains the specific language which, under *Pruitt Office Machines* and *Uptown National Bank*, precludes the imposition of a lien. That provision states that the lease and the master lease contain "all the representations and warranties and the entire understanding between the parties hereto with respect to the subject matter hereof." Neither agreement contains any provision that might be interpreted as reserving a

vendor's lien. Since Brunswick and Equity provided that their written agreements are "the entire understanding" between them, and neither document reserves a vendor's lien, a clear application of the relevant Illinois precedent requires a finding that no lien was intended, and, thus, no lien was created.

Brunswick claims that it had no reason to reserve a lien because the termination payment was not owed until after Brunswick decided not to exercise its option to extend the lease. However, if Brunswick intended to assert a vendor's lien for the termination payment in the event that it vacated the property at the end of the 10-year term, it was required to include a provision in the lease or the master lease indicating such an intent, because these documents constitute "the entire understanding between the parties." See *Oppenheimer*, 297 Ill. 81, 130 N.E. 325; *Uptown National Bank*, 218 Ill. App. 3d at 907, 578 N.E.2d at 1167. Because no such provision exists, Brunswick's vendor's lien claims fail as a matter of law and were properly dismissed. *Oppenheimer*, 297 Ill. 81, 130 N.E. 325; *Uptown National Bank*, 218 Ill. App. 3d at 907, 578 N.E.2d at 1167.

■ Next, Brunswick claims the circuit court erred in finding that Brunswick's complaint failed to state a claim that USF&G was a mortgagee in possession. A mortgagee in possession succeeds to the interest of the landlord and is bound to perform the covenants of the lease. *Kelley/Lehr & Associates, Inc. v. O'Brien*, 194 Ill. App. 3d 380, 386-87, 551 N.E.2d 419, 424-25 (1990). Possession means "physical possession of the mortgaged real estate to the same extent to which the mortgagor, absent the foreclosure, would have been entitled to physical possession." 735 ILCS 5/15—1701(a) (West 1994). Also, the right to collect rents lies with the possessor. *Kelley/Lehr*, 194 Ill. App. 3d at 387, 551 N.E.2d at 424.

Brunswick's complaint alleges that on August 5, 1988, the circuit court expressly vested the rights to manage and operate the property and to collect rents in Burin, as receiver. Therefore, Burin was in possession when Brunswick vacated the property.

Brunswick contends, however, that USF&G was in possession *de facto* through Burin's appointment. Brunswick notes that a mortgagee can be in possession through its agent (*Kelley/Lehr*, 194 Ill. App. 3d at 387, 551 N.E.2d at 424) and claims that receivership is essentially the same thing as agency. Brunswick argues that because USF&G requested Burin's appointment with knowledge of the termination payment provision in the lease, USF&G was a mortgagee in possession through Burin.

■ Brunswick's contention fails under the Illinois Mortgage Foreclosure Law. See 735 ILCS 5/15—1702(a), 15—1704(b) (West 1994).

Section 15—1704(b) states that "[a] receiver appointed pursuant to this Article shall have possession of the mortgaged real estate and other property subject to the mortgage during the foreclosure." 735 ILCS 5/15—1704(b) (West 1994). Therefore, Burin was clearly in possession when the termination payment allegedly became due. Brunswick's claim that USF&G was in possession "in substance and in fact" through Burin is negated by section 15—1702(a). That provision states that (1) no mortgagee is required to take possession, (2) a mortgagee who is entitled to take possession may instead request the appointment of a receiver, and (3) the appointment of a receiver does not preclude the mortgagee from subsequently exercising its right to take possession. 735 ILCS 5/15—1702(a) (West 1994). These statutory provisions conclusively establish that a mortgagee is not in possession upon the appointment of a receiver.

Furthermore, the obligations of agents and receivers are not the same. "Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." Restatement (Second) of Agency § 387 (1958). A receiver, on the other hand, is "an officer of the court" appointed to "secure and preserve property for the benefit of all concerned." *Heritage Pullman Bank v. American National Bank & Trust Co.*, 164 Ill. App. 3d 680, 687, 518 N.E.2d 231, 236 (1987). We reject Brunswick's attempt to equate agents with receivers.

Because the property was in the possession of Burin, as receiver, the trial court properly ruled that Brunswick failed to state a claim that USF&G was a mortgagee in possession.

■ Next, Brunswick claims the circuit court erred in finding that the complaint failed to state a claim that Burin adopted the lease. While a receiver does not, merely by virtue of his appointment, become liable under a lease made prior to his appointment, he nonetheless has a right to elect whether to accept or reject it. *Toushin v. Gonsky*, 77 Ill. App. 3d 508, 515, 395 N.E.2d 1124, 1129 (1979). "If the receiver remains in possession beyond a reasonable time to make the election, he elects to accept the lease by implication, and is bound by its terms." *Toushin*, 77 Ill. App. 3d at 516, 395 N.E.2d at 1130. Brunswick's second-amended complaint alleges that Burin never cancelled or otherwise repudiated the lease. Therefore, the question becomes whether Burin remained in open possession beyond a reasonable time to make the decision to repudiate. *Toushin*, 77 Ill. App. 3d at 516, 395 N.E.2d at 1130.

In *Toushin*, a receiver was appointed for a corporate lessee of several movie theaters to conduct the dissolution of the corporation. *Toushin*, 77 Ill. App. 3d at 509, 395 N.E.2d at 1125. The receiver

failed to pay rent for two of the theaters, although he operated the theaters for at least seven months, and the lessors brought an action seeking to enforce the lease and obtain the rent. *Toushin*, 77 Ill. App. 3d at 515, 395 N.E.2d at 1129. The court held that "the receiver implicitly adopted the leases since he operated the theaters for at least seven months without rejecting the leases." *Toushin*, 77 Ill. App. 3d at 516, 395 N.E.2d at 1130. Therefore, the court found that to be a reasonable time to decide whether to adopt the leases.

■ The pertinent allegations in the second-amended complaint in this case are as follows: Beginning August 5, 1992, Burin managed and controlled the property and exercised all power and control authorized to the lessor; Burin demanded and received rent payments from Brunswick through April 1993, when the lease expired; Burin demanded and received Brunswick's allocable share of real estate taxes, even after the termination payment became due; and Burin never cancelled or otherwise repudiated the lease. Thus, according to Brunswick's complaint, Burin was in open possession and control of the property for approximately nine months before the termination payment became due. This exceeds the seven-month period that the *Toushin* court held was a reasonable time in which to decide whether to accept or reject the lease. We find that the allegations in Brunswick's second-amended complaint are sufficient to state a claim that Burin adopted the lease.

Burin contends that *Toushin* is inapposite to this case, because that case involved a corporate receiver, and here Burin is a receiver appointed under the Illinois Mortgage Foreclosure Law (the Foreclosure Law). 735 ILCS 5/15—1704 *et seq.* (West 1994). However, the Foreclosure Law states that the receiver "shall have all the usual powers of receivers in like cases." 735 ILCS 5/15—1704(b) (West 1994). Therefore, the language of the statute indicates that receivers appointed under the Foreclosure Law are to be treated the same as other receivers. Furthermore, Burin provides no support, either in the form of case law or general policy argument, for its position that rules governing corporate receivers should not be applied to receivers appointed under the Foreclosure Law.

Therefore, the circuit court erred in finding that Brunswick's second-amended complaint failed to state a claim that Burin adopted the lease.

■■ A related issue is whether the circuit court erred in finding that Brunswick's second-amended complaint failed to state a claim that it is entitled under the material breach doctrine to set off the termination payment against any real estate taxes otherwise due. Illinois law is clear that a lease is a contract. *Williams v. Nagel*, 162

Ill. 2d 542, 555, 643 N.E.2d 816, 822 (1994). Under the material breach doctrine, "[a] party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party." *Susman v. Cypress Venture*, 187 Ill. App. 3d 312, 316, 543 N.E.2d 184, 187 (1989). A failure to perform is a material breach where the covenant not performed is of such importance that the contract would not have been made without it. *Haisma v. Edgar*, 218 Ill. App. 3d 78, 86, 578 N.E.2d 163, 168 (1991). The Illinois Supreme Court has applied the doctrine to commercial leases. *University Club v. Deakin*, 265 Ill. 257, 260-61, 106 N.E. 790, 791 (1914).

Brunswick's second-amended complaint alleges numerous facts sufficient to establish that without the termination payment provision, the contract would not have been made. Specifically, the complaint states that the termination payment of $2 million represents two-thirds of the purchase price for Brunswick's sale of the leasehold estate to Equity. Clearly, this was an essential provision without which Brunswick would not have entered into the contract.

■ Burin contends that because a lessee's duty to pay rent is an independent covenant, even a material breach on the part of a lessor does not excuse the lessee's obligation to pay rent. Burin's argument is flawed for two reasons. First, Brunswick claims that Burin's failure to make the termination payment excuses any obligation to pay real estate taxes billed after Brunswick vacated the property, not that it excuses its obligation to pay rent. There is no dispute that Brunswick made all rent payments throughout the term of the lease. Second, the cases relied on by Burin are inapposite because they all involve tenants who alleged the landlord failed to comply with a covenant to repair and who sought to avoid an obligation to pay rent *while remaining on the premises*. See *City of Chicago v. American National Bank*, 86 Ill. App. 3d 960, 963, 408 N.E.2d 379, 381 (1980) ("we know of no authority for the proposition that the duty to pay rent is suspended while the tenant continues to occupy the premises"); *McArdle v. Courson*, 82 Ill. App. 3d 123, 126, 402 N.E.2d 292, 295 (1980) ("[w]e are unaware of any authority in this state for permitting a commercial tenant to both remain in possession and refuse to pay rent"); *Yuan Kane Ing v. Levy*, 26 Ill. App. 3d 889, 892, 326 N.E.2d 51, 54 (1975) ("the lessee may not treat the lessor's failure to repair as a basis for stopping rent payments"). Here, Brunswick seeks to avoid real estate tax liability after vacating the property and relinquishing possession.

Therefore, Brunswick adequately stated a claim that the failure to make the termination payment was a material breach excusing Brunswick from any obligation to pay real estate taxes billed after it vacated the premises.

■ Finally, Brunswick contends that the circuit court erred in finding that Brunswick failed to state a claim that the termination payment provision was a covenant running with the land. A covenant will be deemed to run with the land if: (1) the parties so intended; (2) the covenant touches and concerns the land; and (3) there is privity of estate between the parties. *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188, 457 N.E.2d 1226, 1230 (1983).

■ The intent of the parties "can best be determined by express contractual provisions." *Streams Sports Club*, 99 Ill. 2d at 188, 457 N.E.2d at 1230. Here, the lease specifically states that each provision "shall extend to and shall *** bind and inure to the benefit of Landlord and Tenant and their respective heirs, legal representatives, successors, and assigns." As the lease was attached to the complaint as an exhibit, Brunswick adequately stated a claim that it and Equity intended the covenant to be binding on successors in interest.

A covenant touches and concerns the land if it "affects the use, value and enjoyment of the leasehold estate and of the property." *Nassau Terrace Condominium Ass'n v. Silverstein*, 182 Ill. App. 3d 221, 225, 537 N.E.2d 998, 1001 (1989). Here, the covenant requiring the landlord to pay the tenant $2 million if the tenant does not exercise an option to extend the term of the lease directly affects the value of both the leasehold and of the property. Clearly, without such a provision, the leasehold is worth less, and the fee simple is worth more.

USF&G claims that the covenant does not touch and concern the land because the alleged duty to comply with that covenant did not arise until after the leasehold expired and, therefore, the leasehold no longer had any value. While that may be true, the owner's obligation to make the termination payment still affected the value of the property. In *McAnelly v. Graves*, 126 Ill. App. 3d 528, 467 N.E.2d 377 (1984), the court found that a lease covenant requiring the landlord to refund any unearned portion of prepaid royalty fees to the tenant upon the termination of the lease affected the value of the property and, therefore, ran with the land so as to bind the original landlord's assignees. *McAnelly*, 126 Ill. App. 3d at 535, 467 N.E.2d at 381. The landlord's covenant to refund royalties did not arise until after the leasehold expired, but the court still found that it touched and concerned the land. *McAnelly*, 126 Ill. App. 3d at 535, 467 N.E.2d at 381. Therefore, Brunswick's complaint adequately alleges that the covenant touches and concerns the land.

However, Brunswick's claim that the covenant runs with the land to bind USF&G fails on the third prong—there is no privity between Brunswick and USF&G. Illinois law is clear that "there is no

privity of estate *** between a mortgagee and a lessee of the mortgagor." *Kelley/Lehr*, 194 Ill. App. 3d at 386, 551 N.E.2d at 423. USF&G is a mortgagee, and Brunswick is the lessee of the mortgagor. Brunswick claims that privity exists because USF&G is a mortgagee in possession but, as explained above, that contention is without merit. Therefore, the termination payment provision is not a covenant running with the land to bind USF&G.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed except insofar as it dismissed Brunswick's receiver adoption and real estate tax setoff claims. The case is remanded to the trial court for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

CAMPBELL, P.J., and BRADEN, J., concur.