2022 IL App (1st) 201043-U

No. 1-20-1043

Order filed January 20, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ADVANCE IRON WORKS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant and | ) | Cook County. |
| Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 CH 21554 |
| | ) | |
| SCHAEFGES BROTHERS, INC., | ) | |
| | ) | Honorable |
| Defendant and Counterplaintiff-Appellee and | ) | Michael F. Otto, |
| Cross-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The jury's verdict in favor of the general contractor on the subcontractor's breach of contract claim was not against the manifest weight of the evidence, which showed that the general contractor had performed its obligations under the contract and the subcontractor breached the contract by failing to perform. (2) The jury's verdict in favor of the subcontractor on the general contractor's counterclaim for damages was not against the manifest weight of the evidence, which showed that the general contractor failed to prove the damages it sustained as a result of the subcontractor's breach.

¶ 2     This is an appeal and cross-appeal from a jury verdict in a breach of contract case that the subcontractor, plaintiff/counterdefendant Advance Iron Works, Inc. (plaintiff), filed against the general contractor, defendant/counterplaintiff Schaefges Brothers, Inc. (defendant). The jury returned a verdict (1) in favor of defendant on plaintiff's breach of contract claim, finding that plaintiff had failed to perform under the contract, and (2) in favor of plaintiff on defendant's counterclaim for damages allegedly incurred by hiring replacement subcontractors. The trial court entered judgment on the jury's verdict.

¶ 3     On appeal, plaintiff argues that it is entitled to a new trial because the verdict is against the manifest weight of the evidence. Plaintiff also argues that the trial court abused its discretion by barring plaintiff's expert witness from testifying against certain opinions of defendant's expert and excluding evidence regarding a contract provision between defendant and the owner of the project.

¶ 4     On cross-appeal, defendant argues that it is entitled to either a new trial or judgment in its favor on its damages counterclaim because the jury's verdict ignored defendant's damages as established by the evidence.

¶ 5     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 6                                         I. BACKGROUND

¶ 7     This dispute arose from a contract between plaintiff, a steel fabrication and erection subcontractor, and defendant, the general contractor awarded a contract by the Chicago Park

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

District (Park District) to build two boathouse buildings. Under their signed written subcontract, plaintiff agreed to detail, fabricate and erect the steel for the two buildings for $554,000, plus compensation for changes or additions in the scope of work authorized in writing by defendant. The architect had made several design changes that affected the steel work, and plaintiff sought a price adjustment for the extra work. Plaintiff began a portion of the work while the parties tried to negotiate the price adjustment. After several weeks, the parties failed to reach an agreement on the price adjustment, and plaintiff informed defendant that plaintiff was placing a "hold" on performing any additional work due to nonpayment of its invoices. Shortly thereafter, defendant terminated the parties' contract, stating that plaintiff failed to comply with the terms and obligations of the contract and, therefore, was in material breach thereof. Defendant hired two replacement subcontractors and completed the boathouse project.

¶ 8    In September 2013, plaintiff sued defendant, alleging defendant breached the parties' contract by failing to pay for the work plaintiff performed under the contract, by interfering with plaintiff's ability to perform the remainder of the contract, and by terminating the contract without proper cause. Plaintiff alleged it substantially performed under the parties' contract. Plaintiff further alleged it suffered damages in the amount of $234,161, which included $63,006 for work performed prior to the termination of the contract, late payment charges of 2 percent per month, and $171,155 for lost profits due to lost work production. Plaintiff alternatively raised a claim for unjust enrichment against defendant where plaintiff performed work valued at $63,006 without defendant providing compensation for that benefit.

¶ 9 Defendant filed an answer, affirmative defenses and a counterclaim against plaintiff to recover the damages defendant sustained when it incurred increased costs after it was forced to hire replacement subcontractors. In its answer, defendant denied breaching the contract and contended that it terminated plaintiff for nonperformance. Defendant raised the affirmative defenses that plaintiff breached the contract by (1) failing to comply with its scope of work and fabricate, furnish and install all required structural steel as required by the contract, (2) failing to provide accurate and complete information in its change order requests, which delayed the progress of the project and caused defendant to sustain monetary damages that otherwise would not have been incurred, (3) failing to provide additional supporting information as requested by defendant and the Park District, which was a condition precedent to the change order requests being approved and which delayed the progress of the project and caused defendant to sustain monetary damages, (4) failing to obey and respond to defendant's directives, which established milestone dates for the completion of plaintiff's scope of work and delayed the progress of the project and caused defendant to sustain damages, and (5) stopping work prior to September 1, 2012, which delayed the progress of the project and caused defendant to sustain damages.

¶ 10 In response, plaintiff denied defendant's affirmative defenses and denied liability for any of defendant's alleged damages.

¶ 11 The parties tried their claims before a jury for nine days in November 2019, and approximately seven of those days were devoted to testimony. The court and jury heard extensive testimony from five witnesses on the contested factual issues. Hundreds of pages of project and

post-project correspondence, documents, emails and standards were discussed before the jury, and the majority of those documents were admitted into evidence.

¶ 12   The evidence presented to the jury showed that, on April 2, 2012, the Park District issued for bidding architect drawings for a boathouse construction project to a select prequalified pool of general contractors and subcontractors. Defendant solicited proposals from a series of trades, including steel fabrication. However, before the Park District awarded the project to any general contractor, the architect, on April 17 and 18, 2012, issued revised drawings and specifications that affected the steel work and were designated as Addendum 1 and Addendum 1 Supplement, respectively. These revisions were called addendums because they were issued before the Park District awarded the general contract. On April 25, 2012, plaintiff bid the steel fabrication and erection work for $438,000, and defendant accepted plaintiff's bid.

¶ 13   On May 10, 2012, the Park District awarded the project to defendant.

¶ 14   On June 6, 2012, plaintiff submitted an updated estimate to account for the April 17 and 18 design changes on the steel work. This bid included pricing based on the Addendum 1 and Addendum 1 Supplement, which plaintiff asserted brought the total value of the work to $554,860.

¶ 15   On June 8, 2012, the architect issued further design changes labelled "Bulletin 1"; the Bulletin designation referred to design changes that were issued after the general contract was awarded to defendant. Thereafter, the architect issued further design changes on June 14, 2012, in Bulletin 2; on June 29, 2012, in Bulletin 3; and on July 9, 2012, in Bulletin 4.

¶ 16   Meanwhile, on June 14, 2012, defendant issued a letter of intent to plaintiff, confirming that it intended to hire plaintiff for $503,000 and would send a contract by June 18, 2012. This

letter instructed plaintiff to start preparing anchor bolts and setting plates based on the Bulletin 1 drawings. On June 15, 2012, Bulletin 2 was provided to plaintiff. On June 21, 2012, plaintiff, defendant and the architect met to discuss the Bulletin changes. On July 2, 2012, Bulletin 3 was provided to plaintiff.

¶ 17    Plaintiff and defendant revised the draft contract and then signed their written construction contract on July 11, 2012. The contract specified that the price of the described work was $554,000. Moreover, the described work included the Addendums but did not include the design changes from Bulletins 1 through 4. The contract stated that an allowance of $51,000 had been included in the $554,000 amount for the Addendum 1 design changes. The contract acknowledged that plaintiff would submit change order requests for defendant's approval based on the Bulletins issued by the architect concerning further design changes.

¶ 18    The scope of plaintiff's work under the contract consisted of three aspects: (1) detailing, which includes the preparation of shop drawings, (2) fabrication, which involves the cutting and preparing of the steel as specified on reviewed and approved shop drawings, and (3) erection of the steel. The steel could not be fabricated until plaintiff produced the shop drawings and submitted them to the architect or structural engineer for their review and approval.

¶ 19    In a July 11, 2012 email, defendant instructed plaintiff to prepare shop drawings based on the drawings of Bulletins 1 through 3. In response, plaintiff's principal, Robert Sutphen, stated that he would prepare the shop drawings based on Bulletin 1 only, even though the direction was for Bulletins 1, 2, and 3.

¶ 20    On July 13, 2012, plaintiff issued a purchase order to a detailer whom plaintiff had hired to prepare the shop drawings. A detailer takes the owner's and architect's drawings and specifications and works with the fabricator to develop a computer model from which shop drawings and erection drawings can be generated. The shop drawings indicate where the fabricator needs to cut, drill or weld the steel in the fabricator's shop and where the fabricator needs to make connections to hold the steel in place when it is erected at the job site. Plaintiff's instructions to the detailer pertained only to Bulletin 1 and indicated that Bulletin 2 was on hold.

¶ 21    On July 14, 2012, plaintiff issued change order requests to defendant regarding price increases due to the design changes in Bulletins 1 and 2. On July 15, 2012, plaintiff issued change order requests regarding Bulletins 3 and 4. Defendant, however, did not approve plaintiff's change order requests. After the Park District and architect asked plaintiff for more detail to justify its price increases, plaintiff submitted two revised requests by July 26, 2012. As revised, the sum of plaintiff's change order requests was $460,916.20, which, when added to the $554,000 base contract price, meant that plaintiff was seeking $1,014,916.20 for its work on the project.

¶ 22    On August 8, 2012, plaintiff submitted erection drawings to defendant for review, but defendant treated them as shop drawings and rejected them.

¶ 23    Meanwhile, the Park District and architect reviewed plaintiff's change order requests and had multiple discussions over several weeks with defendant concerning the matter. Defendant conveyed that information to plaintiff. As weeks went by, defendant tried to work with plaintiff and respond to the questions being raised by the Park District and the architect. The Park District and architect asked plaintiff to provide its bid documents, *i.e.*, the calculations plaintiff used to

prepare its bid for the project. Plaintiff, however, refused to provide that information despite an offer of a confidentiality agreement.

¶ 24    The Park District concluded that the design changes under the Bulletins were not as substantial as plaintiff claimed and much of the pricing that plaintiff was requesting as extra work was actually work that had already been included in the original construction documents plaintiff had reviewed when it made its initial bid. Specifically, a few of the two buildings' 35 columns were lengthened, which changed some of the dimensions, but the buildings' footprints did not change. The Park District ultimately authorized an additional $301,779 for the steel work based on the Bulletin design changes, and that offer was made to plaintiff on August 25, 2012. Plaintiff rejected that offer and sent defendant correspondence on August 27, 2012, confirming plaintiff's refusal to accept the Park District's offer. The Park District, architect and defendant never approved and authorized plaintiff's proposed pricing for the full scope of the work, including the extra work described in the Bulletins.

¶ 25    On August 28, 2012, which was about seven weeks into the project, plaintiff sent defendant an email confirming that the basic work of making the shop drawings was not complete. As of that date, the drawings were only 90 percent complete with respect to building A and 70 percent complete with respect to building B. Plaintiff had designed, fabricated, and delivered portions of its scope of work that had been approved by defendant. Plaintiff also had sent defendant a total of five invoices requesting payment for its completed work and for prepayment of materials for subsequent work. The only shop drawings plaintiff completed related to the anchor bolts and setting plates, which would be used at the base of a column as part of the foundation, and the only

steel that was fabricated was the anchor bolts and setting plates. The shop drawing preparation for that work represented less than 5 percent of the total contract, and the fabrication of the anchor bolts and setting plates represented less than one percent of the total contract. Plaintiff never performed any erection work.

¶ 26    On September 5, 2012, plaintiff sent defendant an email that confirmed the limited work plaintiff had completed and informed defendant that plaintiff was placing a "hold" on performing any additional work due to nonpayment of plaintiff's invoices. In a letter dated September 27, 2012, defendant terminated the parties' contract, stating that plaintiff failed to comply with the terms and obligations of the contract and, therefore, was in material breach thereof. The letter advised plaintiff that defendant agreed to pay plaintiff's "actual out of pocket costs for material purchased and time expended as of September 21, 2012, along with associated overhead and profit for this work."

¶ 27    Plaintiff argued to the jury the evidence established that plaintiff did all the work it possibly could do under the July 11 contract because, even though the architect's design revisions prevented the progress of the job, plaintiff still priced those revisions and began generating the drawings, which were almost complete but could not be finalized until the parties resolved the pricing dispute. Plaintiff also argued that defendant and the Park District were trying to take advantage of plaintiff by failing to pay plaintiff's invoices, withholding approval for plaintiff's pricing of the extra work and forcing plaintiff to do the extra work without sufficient compensation. Plaintiff argued that defendant breached the contract by terminating plaintiff without cause before the completion of the work.

¶ 28    Defendant argued to the jury the evidence established that plaintiff had underbid the project, failed to honor their contract by performing the work for the agreed amount of that contract, and tried to use the extra work as an opportunity to recapture some money plaintiff believed it had "left on the table" when it made its erroneous bid. Defendant argued that plaintiff tried to force the issue and obtain its pricing by "slow walking" the project, failing to cooperate and failing to perform.

¶ 29    The jury rendered a verdict on plaintiff's breach of contract claim in favor of defendant, finding that defendant proved it had performed its obligations under the contract and plaintiff had breached the contract by its failure to perform. Regarding defendant's damages counterclaim, the jury rendered a verdict in favor of plaintiff, finding that defendant did not prove it sustained damages resulting from plaintiff's breach.

¶ 30    Thereafter, defendant moved the court to either award defendant damages on defendant's counterclaim or conduct a new trial limited to the damages issue. Defendant argued that the jury ignored the evidence that proved defendant incurred damages when it hired replacement subcontractors after it terminated plaintiff for failure to perform.

¶ 31    Also, plaintiff moved the court for either a judgment notwithstanding the verdict or a new trial, arguing that (1) the trial evidence overwhelmingly favored plaintiff on the issue of performance, and (2) the trial court committed reversable error when it barred plaintiff's principal from addressing certain opinions of defendant's expert witness and barred evidence about terms of the contract between defendant and the Park District regarding the resolution of disputes on a time and material basis.

¶ 32    On September 3, 2020, the trial court heard argument on the parties' posttrial motions and denied both motions. The court stated that the evidence supported the jury's verdict on plaintiff's breach of contract claim where the day after the contract was signed, defendant directed plaintiff to use Bulletins 1 through 3 for the shop drawings but plaintiff instead instructed its detailer to prepare the shop drawings using only Bulletin 1. The court also ruled that no error occurred regarding the exclusion of certain evidence. Finally, the court stated the jury was well within its discretion in reviewing the evidence, evaluating whether defendant made a sufficient showing of its exact damages, and concluding that defendant failed to meet its burden of proof.

¶ 33    Plaintiff timely appealed, and defendant timely cross-appealed.

¶ 34                                II. ANALYSIS

¶ 35                            A. Breach of Contract

¶ 36    Plaintiff argues the trial court abused its discretion when it denied plaintiff's motion for a new trial because the jury's conclusions that plaintiff failed to perform under the contract and defendant did not breach the contract were not supported by the evidence. Plaintiff argues the clear evidence showed that defendant did not instruct plaintiff to proceed to prepare shop drawings based on Bulletins 1 through 3 until August 13, 2012. Furthermore, plaintiff's contract stated that plaintiff would perform changes and additions in the scope of work only upon prior written authorization from defendant *with* terms about compensation, and the evidence established that the parties never agreed about the compensation for the extra work specified in Bulletins 1 through 4. Also, defendant did not sign any of plaintiff's four change order requests. Plaintiff argues the evidence showed that defendant breached because defendant did not pay any of plaintiff's five

invoices, did not pay any part of the $554,000 on a monthly basis, did not prepay 10 percent of the contract price, and did not prepay the mill order even though defendant authorized the mill order.

¶ 37    It is within the sound discretion of the trial court whether to grant a motion for a new trial, and the trial court's decision will remain undisturbed absent a clear abuse of that discretion. *Villa v. Crown Cork & Seal Company*, 202 Ill. App. 3d 1082, 1089 (1990); see also *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997) (an abuse of discretion occurs where no reasonable person would take the view adopted by the trial court). When such a motion is presented, the relevant inquiry is whether the verdict rendered is against the manifest weight of the evidence. *Knight v. Haydary*, 223 Ill. App. 3d 564, 573 (1992). "A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly apparent or when the jury verdict appears to be arbitrary and unsupported by the evidence." *Id*. "A court of review must consider the evidence in the light most favorable to the appellee when determining whether a jury verdict is against the manifest weight of the evidence." *Id.*

¶ 38    "The issue as to which party breached the contract is a question presented to the trier of fact, and its finding will not be disturbed unless it is contrary to the manifest weight of the evidence." *Neibert v. Schwenn Agri-Production Corp.*, 219 Ill. App. 3d 188, 190 (1991). To recover for breach of contract, a party must prove (1) the existence of a valid and enforceable contract, (2) performance by the party, (3) breach of the contract by the opposing party, and (4) damages to the party resulting from the breach. *W.W. Vincent & Co. v. First Colony Life Insurance Co.*, 351 Ill. App. 3d 752, 759 (2004).

¶ 39    Regarding the issue of plaintiff's performance, the record shows that on July 11, 2012, the same date the parties' contract was signed, plaintiff failed, despite defendant's direction, to prepare the shop drawings based on the most current Bulletins. Specifically, plaintiff's principal Sutphen admitted that plaintiff was in possession of Bulletins 1 through 3 prior to signing the contract with defendant on July 11, 2012, and that plaintiff had received from defendant on July 11, 2012, direction to prepare the shop drawings based upon the drawings of Bulletins 1 through 3. Sutphen, however, responded to defendant's direction by stating that plaintiff would use only Bulletin 1 to prepare the shop drawings. Furthermore, plaintiff's noncompliance was shown in plaintiff's July 13, 2012 purchase order to its detailer, which had instructions that pertained only to Bulletin 1 and indicated that Bulletin 2 was on hold.

¶ 40    Plaintiff's performance failure persisted throughout its presence on the project. As late as August 28, 2012, the shop drawings still were not complete. The boathouse buildings were designed with a steel membrane, and the evidence showed that the structural steel was an integral and material component of the buildings. Plaintiff's failure to perform delayed the construction schedule and overall project because the buildings could not be constructed until the structural steel was fabricated and erected. Moreover, plaintiff's fabrication was limited to partial anchor bolts and setting plates.

¶ 41    Plaintiff had the burden to prove performance and failed to sustain that burden because, as Sutphen admitted, plaintiff did not fabricate, furnish and install all the required structural steel. "A failure to perform is a material breach where the covenant not performed is of such importance that the contract would not have been made without it." *United States Fidelity & Guaranty*

*Company v. Old Orchard Plaza Ltd. Partnership*, 284 Ill. App. 3d 765, 776 (1996). A material breach of contract constitutes the "failure to do an important or substantial undertaking set forth in a contract." *Mayfair Construction Company v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 202-03 (1993). Whether a material breach of contract has been committed is a question of fact. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006).

¶ 42    Plaintiff claims it had a valid excuse for suspending work when its invoices were not paid within thirty days. However, a "party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he recover damages from the other party to the contract." *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 361-62 (2009). "A contractor whose work amounts to less than substantial performance may not recover on the contract. Under such circumstances, a contractor may recover under a quasi-contractual theory for the reasonable value of its services rendered less any damages suffered by the purchaser." *W. E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 132 Ill. App. 3d 260, 264 (1985).

¶ 43    Here, the jury learned that defendant paid plaintiff and its detailer for the limited work that could be verified. Thus, the evidence established that plaintiff was fully compensated for the nominal work it performed.

¶ 44    The evidence establishes that plaintiff was provided with all the information about the drawings, answers to its questions and the direction to proceed. Plaintiff, however, still refused to produce the shop drawings, which prevented the fabrication and erection of the structural steel.

¶ 45    The jury heard the testimony of the witnesses and viewed the evidence presented. It was the jurors' prerogative to draw reasonable inferences and ultimate conclusions from that evidence.

See *Finley v. New York Central R.R. Co.*, 19 Ill. 2d 428, 436 (1960). An election between conflicting evidence and the assessment of credibility of the witnesses were properly questions for the jury's resolution. *Brooks v. City of Chicago*, 106 Ill. App. 3d 459, 464 (1982). The verdict will not be altered merely because the jury could have found differently. *Lee v. Grand Trunk Western Railroad Company*, 143 Ill. App. 3d 500, 512 (1986). We have reviewed the record and find the jury's verdict to have been properly supported by the evidence. Thus, we have no basis upon which to disturb its findings.

¶ 46                                                  B. Excluded Evidence

¶ 47     Plaintiff argues that it is entitled to a new trial because the trial court made serious and prejudicial errors concerning the exclusion of evidence. Specifically, plaintiff challenges the court's rulings that (1) barred Sutphen from expressing certain opinions that were critical of some of the enumerated opinions of defendant's expert, Kenneth Floody, and (2) precluded plaintiff from making any reference to the provisions of defendant's contract with the Park District.

¶ 48     "Generally, a reviewing court will not reverse a jury verdict due to error in the admission of evidence unless there has been a denial of real justice. [Citation.] Not every error requires reversal; where it appears that an error did not affect the outcome in the trial court, or where the reviewing court can see from the entire record that no injury has been done, the judgment will not be disturbed. [Citation.]" *Schuchman v. Stackable*, 198 Ill. App. 3d 209, 228 (1990).

¶ 49     First, plaintiff argues the trial court abused its discretion when it precluded plaintiff's expert, Sutphen, from expressing his disagreement with the portion of Floody's 22 itemized opinions that did not involve his use of RSMeans, a database of cost estimates for many facets of

construction projects. Plaintiff argues the court's ruling prevented plaintiff from responding to Floody's primary opinions. Furthermore, according to plaintiff, defendant cleverly avoided any reference to RSMeans during Floody's trial testimony and used only the portion of his 22 opinions that did not mention RSMeans. Plaintiff contends it disclosed Sutphen's contrary opinions to preserve its right to have him respond at trial to Floody's opinions and explain why Floody was wrong. Plaintiff argues that this error was extremely prejudicial to plaintiff and warrants a new trial.

¶ 50    According to the record, the court set the trial date for November 4, 2019; ordered plaintiff to disclose its experts by September 3, 2019, and present them for deposition by September 24, 2019; and ordered defendant to disclose its experts by October 15, 2019, and present them for deposition by October 31, 2019. The parties waived the local rule that required completion of discovery within 60 days before trial.

¶ 51    Defendant disclosed Floody on October 15, 2012, and disclosed 22 opinions held by Floody, which mentioned his use of RSMeans methodology as a basis to support some of his opinions. On October 21, 2012, plaintiff requested leave to serve a rebuttal disclosure the day of Floody's October 29, 2019 deposition. The trial court granted plaintiff leave but ruled that the scope of the rebuttal was limited to issues pertaining to RSMeans.

¶ 52    After Floody's deposition, plaintiff, pursuant to Supreme Court Rule 213 (eff. Jan. 1, 2018), served second supplemental answers to defendant's Rule 213(f)(3) interrogatories. Part of this disclosure was a rebuttal of Floody's use of the RSMeans database, but the disclosure also

stated that Sutphen disagreed with Floody's 22 opinions and elaborated in 22 items on the basis for Sutphen's disagreement.

¶ 53 On October 30, 2019, defendant moved the court to bar plaintiff's rebuttal opinions other than RSMeans or in the alternative grant defendant leave to serve surrebuttal opinions and continue the trial. Defendant argued the 22 itemized portion of the disclosure was not proper rebuttal because it was not limited to the issue of the RSMeans methodology, was disclosed too close to trial, and was not raised when plaintiff sought leave to disclose rebuttal opinions. At the November 1, 2019 hearing on the parties' pretrial motions, plaintiff argued that its disclosure had been erroneously designated as rebuttal and did not actually constitute a rebuttal.

¶ 54 The trial court granted defendant's motion, struck everything from plaintiff's disclosure unrelated to RSMeans, and clarified that Sutphen would be able to testify to any timely disclosed opinions.

¶ 55 A court's evidentiary rulings are not reviewable on appeal unless properly preserved. *Thornton v. Garcini*, 237 Ill. 2d 100, 106 (2009). When the court makes its rulings before trial in response to the parties' motions *in limine*, the rulings are interlocutory and remain subject to reconsideration throughout trial. *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 40 (2010). Although plaintiff raised this issue in his posttrial motion, that was not sufficient to preserve the issue for appeal. *Cf. Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002) (denial of the complaining party's pretrial motion to exclude evidence was not sufficient to preserve the issue for appeal, the complaining party also must make a contemporaneous objection at trial when the evidence is introduced to allow the trial court the opportunity to revisit its earlier ruling). Plaintiff's failure to

ask the court to reconsider its interlocutory ruling during the trial results in forfeiture of the issue on appeal. *Palm v. Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 26 (forfeiture applies when an issue is not raised in a timely manner).

¶ 56 Although plaintiff contends the trial court's ruling eviscerated plaintiff's ability to respond to Floody's primary opinions, plaintiff's appellate brief does not specify the opinions, testimony or evidence encompassed by the Rule 213 disclosure that plaintiff did not present at trial. Nor does plaintiff cite to the trial record to show which aspects of Floody's testimony were not addressed by Sutphen. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 ("failure to provide proper citations to the record is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument"). Furthermore, at trial, plaintiff did not attempt to recall Sutphen as a rebuttal witness when the defense rested. Similarly, plaintiff did not request or submit an offer of proof as to the opinions, testimony or evidence it wanted to present but thought were barred by the trial court's ruling. Consequently, plaintiff has forfeited review of this matter.

¶ 57 Forfeiture aside, the record shows that Sutphen testified at length on direct and cross-examination to all aspects of plaintiff's theory of the case and the contested issues. We conclude that the trial court did not abuse its discretion by barring Sutphen from testifying regarding his untimely disclosed opinions.

¶ 58 Next, plaintiff argues the trial court abused its discretion when it excluded evidence about the terms of the contract between defendant and the Park District (the Owner's Contract), which provided that defendant and the Park District's disagreements on price proposals would result in

the work being paid on a "time and material basis." The Owner's Contract also provided that defendant was responsible for all of the work performed by the subcontractors as if defendant had performed the work using its own forces, and defendant must "require the subcontractors to communicate with the Park District through [defendant] only." Plaintiff argues that these provisions meant that when defendant did not obtain approval from the Park District for plaintiff's pricing proposals concerning the design changes, defendant was required to handle the pricing dispute on a time and materials basis, and it was irrelevant that plaintiff had excluded the Owner's Contract in plaintiff's subcontract with defendant.

¶ 59   According to the record, the court granted defendant's motion *in limine* to bar plaintiff from arguing or submitting evidence regarding the general conditions of the Owner's Contract. The general conditions included a provision that if the Park District and defendant could not "agree on a price based on a proposal, then the work shall be paid on a time and material basis." The trial court excluded any reference to the Owner's Contract because Sutphen's revisions to plaintiff's subcontract with defendant had excluded the general conditions, including the time and material provisions, of the Owner's Contract, and plaintiff's contract with defendant did not contain a comparable provision. Plaintiff cites no relevant authority to support its implication that it is permitted to claim relief under the Owner's Contract even though plaintiff expressly excluded the Owner's Contract, and plaintiff's suggestion that defendant, independent of any contractual obligation, was required to either approve plaintiff's pricing of the extra work or pay plaintiff on a time and material basis finds no support in the record.

¶ 60    We conclude that the trial court did not abuse its discretion when it excluded any references to the excluded provisions of the Owner's Contract.

¶ 61                              C. Damages Counterclaim

¶ 62    Defendant argues that the evidence established the damages claimed in defendant's counterclaim and the trial court erred when it denied defendant's posttrial motion to either award damages on the counterclaim based upon the evidence or grant a new trial on the counterclaim limited to the issue of defendant's damages. Defendant contends the jury's verdict on the counterclaim ignored the evidence about the dollar value of defendant's damages.

¶ 63    Defendant states that it was forced to hire two subcontractors, a steel fabricator and a steel erector, as replacements after defendant terminated plaintiff for nonperformance. Hiring the replacement subcontractors increased defendant's costs, which defendant absorbed, by $252,401.51. Defendant's principal, Ken Schaefges, testified about how the damages were calculated. Specifically, the actual dollar value of the payments defendant made to the replacement subcontractors totaled $1,108,186.51. From that sum, defendant subtracted $554,000 (the value of plaintiff's base contract) and $301,779 (the value that the Park District deemed an appropriate payment for the extra work reflected in Bulletins 1 through 4). The net balance was $252,401.51, representing the value of defendant's alleged damages due to plaintiff's failure to honor its contractual obligations.

¶ 64    The determination of damages is a question of fact that is within the discretion of the jury. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 247 (2006). When reviewing a question of the adequacy of damages, the court must consider the record as a whole. *Snelson v. Kamm*,

204 Ill. 2d 1, 37 (2003). "A new trial on the question of damages only is appropriately granted where (1) the jury's verdict on the question of liability is amply supported by the evidence, (2) the question of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the [opposing party], and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 408 (1985). When reviewing whether the jury reached a compromise verdict, the court considers whether the verdict on the issue of liability was amply supported by the evidence. *Vacala v. Village of LaGrange Park*, 260 Ill. App. 3d 599, 617-18 (1994).

¶ 65    The court stated the jury was well within its discretion in reviewing the evidence and evaluating whether defendant made a sufficient showing of its exact damages. Defendant submitted the lien waivers of the replacement subcontractors and deducted their final prices, but the evidence did not establish what the final price would have been if plaintiff had performed the contract. The jury was not required to assume that plaintiff's final price would have been based on their base contract amount of $554,000 plus the $301,779 the Park District deemed an appropriate payment for the extra work reflected in Bulletins 1 through 4 because, although everyone agreed that the Bulletins did change the cost of the project, they did not agree about or resolve how much plaintiff should have been paid for the changes in the work shown by the Bulletins. The jury was not persuaded that defendant's damages had been established with specificity, and that conclusion was consistent with the record.

¶ 66                                   III. CONCLUSION

¶ 67    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 68    Affirmed.