DECATUR CEMETERY LAND COMPANY, Plaintiff-Appellee, *v.* ARTHUR W. BUMGARNER *et al.*, Defendants-Appellants.

(No. 11547; )

Fourth District—August 15, 1972.

Herrick, Rudasill & Moss, of Clinton, (Ray Moss, of counsel,) for appellants.

Wilson, Dyar, Houchen & McDonald, of Decatur, (Kirtley E. Wilson, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

The trial court entered a judgment for $2,812.80 in favor of the plaintiff and against the defendants on the written contract dated September 18, 1963, for the purchase of two crypts in Graceland Cemetery. The defendants denied that the plaintiff had complied with its contract, denied that they were in default and admitted that they paid nothing but the down payment on the contract. By way of affirmative defense they pleaded (1) that the execution of the contract on their part was obtained through the fraud of the plaintiff in that plaintiff's agent represented to the defendants that they would be released from any obligation on said contract at any time that they desired and (2) that the plaintiff did nothing to mitigate its damages, if any. The trial court found the issues in favor of the plaintiff and against the defendants and entered a judgment for $2,812.80 which appears to be the balance due on the contract after allowing the principal credit of $100 and imposing interest from the date that the crypts were ready for occupancy in the cemetery. While plaintiff's complaint alleged $3,658.40 was due, there is no cross-appeal by the plaintiff.

There was no verbatim transcript and the report of proceedings is a recollection record stipulated to between the parties in accordance with Illinois Supreme Court Rule 323. (Ill. Rev. Stat. 1971, 110A, par. 323(c).) The evidence shows a written contract for the purchase of two crypts for $2,790 with the down payment of $100 and semi-annual payments of $335 beginning March 18, 1964, with interest at 6% on all installments 30 days in default. The contract provided for interment rights when the

contract price had been paid in full and the construction of the mausoleum crypts was completed. Money paid on the purchase agreement was to be escrowed until construction had been begun by the cemetery and if no such construction was begun, the funds would be returned to the purchaser on demand. The contract further provided that if the need for interment arose before the crypts were completed the cemetery would furnish temporary entombment space provided that the contract price was paid in full. It also provided that in case of default for more than 60 days on any installment payment the cemetery might at its option on 30 days notice sent by registered mail declare the agreement canceled and retain all sums which shall have been paid hereunder at liquidated damages and for cost in respect there hereof. The purchase agreement could be assigned or transferred with the cemetery's prior written consent. It also provided "no oral representation or variations of this agreement shall be valid or binding upon either party hereto".

A few days after the contract had been signed the defendants saw a Mr. Taylor, who appears to be an officer of the company, and told him that the salesman had said they might rescind at any time and that they wanted to rescind. He kept saying "well, think it over" and they insisted that they did not want to think it over, they wanted to rescind the contract. Nothing was done. In April, 1968, the defendants received letters asking them to make arrangements for their payments. Mrs. Bumgarner telephoned and reaffirmed that they wanted to cancel. Plaintiff's credit manager testified that no one was pressured to pay until the crypts were ready and that 750 of them had been constructed. On completion of payment, a certificate of ownership was to be issued to the defendants. None had yet been issued to the defendants.

This record shows that in July of 1968, plaintiff called the defendants and their son answered. Word was left for one of the parents to call. On the next day, Mrs. Bumgarner called and said they woud like to cancel. The notations on the document or cards of the plaintiff company stated "I told her I had no authority to discuss this. She should come in and talk to Mr. Taylor. She can't get in for a month or so—will be busy moving". Defendants did nothing further. This card record and its contents were marked as defendants' exhibit No. 1 and admitted and received into evidence. The purchase agreement was marked as plaintiff's exhibit No. 1 and admitted and received into evidence.

■ In *Wilson v. Village of Forest View*, 69 Ill.App.2d 400, 217 N.E.2d 398, it is stated:

" It is well settled that where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as re-

scinded, and recover upon quantum meruit so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and *at the end of the time specified in the contract for performance, sue and recover, under the contract;* or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing. L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59-80; Banik v. Bishop-Stoddard Cafeteria Co., 288 Ill.App. 174, 5 N.E.2d 868. (Emphasis supplied.)' "

It seems obvious from the facts stated above that the cemetery association had fully performed its contract and had elected to pursue option No. 2, that is, that it kept the contract alive for the benefit of both parties and at the end of the time specified in the contract for performance sued and recovered amounts due according to its terms.

■■ The defendants pleaded that the plaintiff had failed to mitigate damages. Such a plea is an affirmative defense which must be pleaded and proved by the defendants. (*Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656; 35 A.L.R.3d 487.) Neither party briefed the question of whether the burden is on the plaintiff or on the defendants to prove a failure to mitigate damages. That failure is pleaded as an affirmative defense by the defendants. Plaintiff denied it. There is no evidence one way or another as to what steps, if any, were taken by the cemetery to dispose of this lot. Defendants have failed to prove their affirmative defense or carry the burden of proof required of them.

■■ As a further affirmative defense, the defendants charged "that the plaintiff's agent represented to the defendants that they would be released from any obligation on said contract at any time that they desired". The plaintiff filed its answer denying this charge. There is no counterclaim to rescind the contract, but rather the fraud as alleged is pleaded in bar of the plaintiff's suit on the contract. Assuming without deciding that the evidence concerning the promise of the salesman is competent to modify the written contract, evidence is lacking in this record that at that time plaintiff's intention was one of nonperformance. The rule is stated in 37 Am.Jur.2d, par. 69: "In order to render non-performance of a promise fraudulent, the intention not to perform must exist when the promise is made; and if the promise is made in good faith when the contract is entered into, there is no fraud, even though the promisor subsequently changes his mind and fails or refuses to perform. Moreover, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently not performed". In this record, when the defendants went to the manager of this company,

he told them to think about it for a few days. They said they didn't need a few days, that they wanted to rescind. The record is silent and nothing was done. Likewise in April of 1968, when they were contacted, once again they were invited to come to the cemetery and discuss the matter as the credit manager had no authority to rescind or cancel the contract. There is no proof in this record on the part of the defendants that at the time the promise of the salesman was made there was no intention on either his part or on the part of the cemetery association not to do that. Whether a promise was made with the intention not to perform is a question of fact. That question of fact has been determined by the trier of facts and we cannot say that this record establishes that its finding is against the manifest weight of the evidence. Indeed this record would indicate that what actually happened was that the defendants simply changed their minds and decided they didn't want the crypts. As ordinary people, they were bound to know that there was a contract still outstanding. They did nothing further. As a matter of fact, Mrs. Bumgarner's statement to the credit manager that they wanted to cancel the contract indicated that she then well knew that the contract had not been rescinded and had not been canceled. An opportunity was afforded to discuss the matter and disregarded. Under these circumstances, we cannot say that the defendants have proved their affirmative defense or that as a matter of law any fraud was established.

Accordingly the judgment of the trial court should be and it is hereby affirmed.

Judgment affirmed.

CRAVEN, P. J., and SIMKINS, J., concur.