STEVEN TOUSHIN, Plaintiff-Appellee, *v.* SHARON GONSKY *et al.*, Defendants-Appellees.—(JOHN ROSSEN *et al.*, Intervening Plaintiffs-Appellants, *v.* FESTIVAL THEATER, INC., *et al.*, Appellees.)

First District (5th Division)    No. 78-1156

Opinion filed October 5, 1979.

Russell J. Hoover, of Jenner & Block, of Chicago, for appellants.

Edward T. Joyce, Ltd., of Chicago (Edward T. Joyce, Mary Anne Spellman, and Steven J. Rotunno, of counsel), for appellee James Flanagan.

Angelo Ruggiero, of Chicago, for appellees Steve Toushin and Festival Theater, Inc.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Appellants challenge orders of the circuit court which denied them leave to intervene and which denied their claims for rent against the receiver. They raise the following issues for review: (1) whether the trial court erred in denying their petition to intervene; and (2) whether the trial court erred in denying appellants' claims for rent and other charges. In addition, appellees Toushin and Festival Theater, Inc. (Festival), have filed a cross-appeal and raise the additional issue of whether the trial court's order denying the return of a security deposit and a request for a surcharge was against the manifest weight of the evidence. We reverse and remand. The pertinent facts follow.

The instant appeal is an outgrowth of an action for an accounting and the dissolution of Festival brought by Steven Toushin against Paul Gonsky, Jeffery Begun, and Festival on April 16, 1975. Paul Gonsky died during these proceedings and his executrix was substituted as a party. Those three were the sole shareholders of Festival, a corporation which operated eight theaters, two of which are involved in this appeal. Begun and Gonsky counterclaimed against Toushin in their own behalf and for Festival. Toushin answered this counterclaim and brought his own further counterclaim against Begun and Gonsky, seeking the appointment of a receiver for Festival to conduct its dissolution. On July 28, 1977, an order was entered by agreement appointing James M. Flanagan receiver for Festival, effective August 2, 1977.

Appellants had previously leased two theaters to Festival, the Festival Theater and the Three Penny Cinema. It is necessary to set forth the terms of the various leases to understand the parties' contentions and liabilities.

*Three Penny Cinema*

On July 25, 1971, Cine La Joya Corporation, as sublessor, and Festival Theater, Inc., as sublessee, entered into a sublease for the theater premises at 2424-26 North Lincoln Avenue, Chicago, Illinois. The sublease provided for a monthly rental of $850 for the first year, $950 per month thereafter, and an additional rent of 10 percent of the weekly gross box office receipts in excess of $4750. The term of the sublease expired on June 14, 1975. Other provisions in the sublease obligated the lessee to provide at its expense satisfactory boiler insurance, and at the termination of the lease, to return the theater fixtures and equipment in good condition, reasonable wear and tear excepted.

On November 29, 1972, the parties entered into a rider to the sublease which increased the fixed monthly rental to $1000 and which cancelled the provisions for additional rent based on the percentage of gross receipts. The rider also granted the lessee an option to renew the lease for five years if Festival gave notice of its intention to do so prior to May 15, 1974; the rider provided that, in the event the option was exercised, the fixed monthly rental would be $1100 for the period June 15, 1975, to June 14, 1977, and $1175 per month thereafter, through June 14, 1980. On April 11, 1974, Festival gave written notice of its election to exercise the renewal option.

On February 9, 1977, Begun and Rossen entered into a further agreement with respect to the Three Penny Cinema, extending the lease term by 2 years 8½ months to February 1983, increasing the monthly rental commencing with the March 1, 1977, installment to $1400, and giving Festival an option to extend the lease to 1986.

*Festival Theater*

On April 21, 1971, Puerto Rico Theater Corporation, as lessor, and Festival, as lessee, entered into a 3-year lease for the theater premises at 3912 North Sheridan Road, Chicago. Subsequently, Puerto Rico Theater Corporation assigned its interest in the lease to John and Louise Rossen.

On November 29, 1972, Festival and John Rossen entered into a rider to the Festival Theater lease, which extended its term to April 30, 1976, prescribed a monthly rental of $950 plus 10 percent of the weekly gross box office receipts in excess of $4750, and granted the lessee two renewal options. Festival was given an option to renew the lease for two years commencing May 1, 1976, provided it gave written notice of its intent to

do so at least 90 days prior to expiration of the lease. It was given an additional 2-year renewal option commencing May 1, 1978, subject to the same 90-day proviso.

Festival gave no written notice of its intent to renew the Festival Theater lease. On January 10, 1977, Begun and John and Louise Rossen entered into a new 4-year lease for the Festival Theater. The term of the lease was May 1, 1976, to May 31, 1980, and the prescribed rental was $2000 per month plus 10 percent of the weekly gross box office receipts in excess of $5000. The lease gave Festival an option to renew through May 1984, at a set increased rental for the renewal period. Other provisions in the lease contained a commitment by the lessee that it would return the fixtures and equipment in good condition, that it would provide boiler insurance at its expense, and that it would pay its pro-rata share of the water bills assessed against the building of which the theater was a part.

Festival stopped paying rent for the Festival Theater around April 1977 and for the Three Penny around August 1977. On August 8, 1977, appellants sent a letter to the receiver informing him that there were rent delinquencies, at the time his appointment became effective, of about $13,200 and requesting payment to avoid repossession. The receiver did not respond to the letter. Later in August 1977, appellants instituted forcible entry and detainer actions against Festival to recover possession of the two theaters. Ex parte judgments for possession were entered on August 23, 1977, for the Festival and on September 7, 1977, for the Three Penny. On August 29, 1977, the receiver filed a petition for a status quo order seeking to consolidate the forcible entry cases with the instant case and to enjoin appellants from attempting to sue for money or to regain the theaters except by way of this action. On September 6 the trial court ordered that appellants not interfere with the receiver's operation of the two theaters without leave of court.

Appellants answered the petition for status quo by setting forth the rent and other delinquencies which were allegedly due them and requesting that the receiver turn over possession of the theaters. The receiver requested that appellants prove that the later leases were valid and plaintiff Toushin claimed that Begun entered the later leases without authority. Appellants sought an immediate hearing on their claims which was delayed for some time. On October 31, 1977, the court did order the receiver to pay appellants $2400 as follows: (1) $1000 as "current rent" for the Three Penny Cinema; (2) $1000 for the Festival Theater; and (3) $400 for insurance and water.

On December 19, 1977, appellants petitioned for leave to intervene in the dissolution suit. The complaint in intervention sought the payment of the delinquent rents, related lease charges, and possession of the theaters. The court continued the petition until January 17, allowing any party until

January 11 to object to the intervention. Although there was no objection filed, the court did not rule on the petition until April 10 when it denied leave to intervene.

On January 17 appellants sought modification of the status quo order by having the receiver return possession of the Three Penny and conditioning his possession of the Festival upon payment of rent under the undisputed leases until the validity of the new leases could be determined. On February 9 the receiver was ordered to turn the Three Penny over to appellants and he did so. On February 20 appellants sent the receiver a letter detailing their claim for rent and other charges totalling more than $23,000.

On March 3, the court dismissed the case "with prejudice * * * subject to the Receiver filing his Final Reports within twenty-one (21) days and subject to other orders of Court necessary or proper for the implementation of the settlement agreement." On March 20 the court ordered the receiver to close the Festival Theater and to give Toushin possession. On March 24 the receiver sent appellants a letter stating that he had been discharged as receiver and that further negotiations should be handled through Toushin. The following day Toushin removed various equipment from the Festival Theater.

On March 31 appellants moved for alternative forms of relief as follows: (1) an order compelling the receiver to pay $45,710.73 (also indicated as $38,610.73) as rent and other charges for the use of the two theaters; (2) vacation of the March 3 order of dismissal and a ruling on the petition for leave to intervene; or (3) an order enjoining the receiver or other parties from turning over any assets to Festival and that the court set a hearing on their claims against the receiver. On April 10, the court entered an order denying appellants' first two requests and their petition for leave to intervene but enjoined the receiver from turning $25,000 over to Festival pending a hearing on appellants' claims. The following pertinent testimony was adduced at the hearing.

Steven Toushin testified as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He, Gonsky and Begun signed the lease for the Three Penny Cinema on July 25, 1971, on behalf of Festival. On November 29, 1972, he signed a rider to the lease. He did not remember certain paragraphs as being in the rider when he signed since he did not initial the paragraphs. He did not learn that Begun had executed a later lease for that property or for the Festival Theater property until July 1977. They had discussed renewal of leases generally and he was told that Begun was taking care of all corporate business.

John Rossen testified. He was president of Cine La Joya and

executed the leases to the Three Penny Cinema and Festival Theater. It was stipulated that a second lease for the Festival Theater was signed by Begun. Rossen stated that it was signed on January 10, 1977. An amendment to this lease was signed by Rossen and Begun on February 9, 1977. Rossen testified that the option period for renewal of the Festival Theater lease had expired and he called Begun asking whether he intended to negotiate a new lease. He informed Begun that until a new lease was signed, the rental was then on a month-to-month basis only. Begun was unaware that the period had expired since the copy of the lease had apparently been stolen from the theater, but did say that he wanted to renew the lease. Rossen conducted negotiations for the new lease with Begun.

Rossen recounted various amounts he had to pay to repair the Three Penny Cinema after he regained possession of it. He also stated that he had been aware that the receiver wanted to sell the leaseholds of the two theaters. He admitted that he had spoken to two prospective purchasers who had offered to buy the Three Penny leasehold during the receivership. After the receivership was ended he sold the leasehold to one of them for $25,000. He did not inform the receiver of these offers.

Referring to the rider to the original 1971 Three Penny lease, he stated that paragraph 24b provided for a $30,000 security deposit to be applied over the initial two-year period to pay the percentage portion of the rent, which was 10 percent of the box office receipts in excess of $4750. Paragraphs 39, 40 and 41 of the rider were in different type than the rest of the rider as were certain other additions. Paragraph 41 provided that all sums not applied under paragraph 24b within two years became the property of the lessor. Rossen testified that the paragraphs were added on the day the lease was executed by the agreement of himself, Toushin, Begun and Gonsky. Toushin and Gonsky signed the lease before the paragraphs were added and left the office. Later, Rossen initialed each paragraph while Gonsky initialed only paragraph 39. Rossen's explanation for this was that Gonsky felt that the one initialing covered all three paragraphs.

Regarding Begun's authority to sign the second Three Penny lease in 1977, Rossen stated that Begun was in control of the theaters and that he had always dealt with Begun on matters concerning the lease. At the time of the signing of the second lease, Rossen was aware of the lawsuit between Toushin, Begun and Gonsky but did not inquire about Begun's authority to sign the lease. It was stipulated that during 1976 and 1977 Begun held himself out to be Festival's president and that he was so listed in the Certified List of Domestic and Foreign Corporations.

Steven Toushin testified that when the original lease for the Three

Penny Cinema was signed paragraph 41 was not part of the lease. He also admitted that on March 25, 1978, he removed equipment belonging to Festival from the Festival Theater.

In his summation the receiver requested an order for the return of the security deposit given with the original Three Penny lease which may not have been earned. He also sought a surcharge against Rossen of $25,000 which is the amount that Rossen received for the sale of the Three Penny leasehold after the receiver returned possession to him. He argued that Rossen's failure to inform the receiver of the offer prevented the estate from obtaining the additional funds and showed Rossen's failure to mitigate damages. On April 20, after the hearing, the court denied appellants' claim and also the motion for the surcharge.

The court stated its findings as follows:

"I think Mr. Rossen should have mitigated his damages. And he failed to do so. I think he should have cooperated with the Court in an effort to dispose of these theaters. And he failed to do so.

I disagree with you that he cooperated with the Court and the receiver. He was just thinking of himself. He received $30,000 in this case, and I still don't understand how he received it.

Furthermore, his testimony relative to the lease and to the fact that the other three directors or owners of stock, or whatever they may be designated as, didn't append their signatures, Mr. Hoover, to me is just not subject to true belief. Mr. Rossen is the one who gained here. He already had $30,000, and he received some additional rent.

I don't hold that second lease to be valid. It just doesn't make good common sense.

*   *   *

The ruling of this Court is that Mr. Rossen go hence without day, and there will be no surcharge. But I believe that if we would sit down and mathematically compute the amount of money that Mr. Rossen received and what I think the receiver should have been given, there is a serious problem in this Court's mind as to whether or not Mr. Rossen shouldn't repay back some money and, indeed, shouldn't pay for the costs of these proceedings."

This appeal followed.

OPINION

Appellants first contend that they should have been granted leave to intervene as a matter of right in the underlying suit since they were "so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)(c).

■■ ■ A party seeking to intervene must have an enforceable or recognizable right, more than a general interest in the subject matter of the proceedings. (*Gray v. Starkey* (1976), 41 Ill. App. 3d 555, 353 N.E.2d 703; *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136.) In the instant case, appellants had a claim for rent and other charges against the corporation. The subject matter of the litigation was the dissolution and liquidation of a partnership and a corporation, a matter based on alleged fraud between the shareholders. A decision by the court to dispose of the leasehold or distribute property to pay the rent would not adversely affect appellants. Adequate protection of their claim is provided by sections of the Business Corporation Act. (Ill. Rev. Stat. 1977, ch. 32, pars. 157.1 through 157.167.) Section 89 of the Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.89) provides for the filing of claims by creditors of a liquidating corporation. The dissolution of the corporation without appellants as parties would not have terminated their rights. Section 94 of the Business Corporation Act (Ill. Rev. Stat. 1977, ch. 32, par. 157.94) provides:

> "The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the order of the court when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name."

Since a judgment to dissolve the corporation would not determine the merits of appellants' claim, prejudice their rights, or bar recovery, they cannot be said to be "adversely affected" by a distribution of the property. Since appellants have failed to show that their rights would be adversely affected by the suit, and the issues regarding the rent claim are not common to the underlying suit and would delay its termination, intervention was properly denied.

■■■ Appellants next contend that their claim for rent for the two theaters should have been allowed against the receiver. They seek only rent and the incidental expenses incurred during the receivership period. It is clear that a receiver by virtue of appointment does not become liable under a lease made prior to his appointment, but has a right to elect whether he will adopt the lease or reject it if he finds it is of no value to the estate. (*People ex rel. Nelson v. West Town State Bank* (1940), 373 Ill. 106, 25 N.E.2d 509; *Spencer v. World's Columbian Exposition* (1896), 163 Ill. 117,

45 N.E. 250; *Link Belt Machinery Co. v. Hughes* (1898), 174 Ill. 155, 51 N.E. 179; 16 Fletcher, Cyclopedia Corporations §7794, at 359-68 (perm. ed. 1962).) If the receiver remains in possession beyond a reasonable time to make the election, he elects to accept the lease by implication, and is bound by its terms. (*DeWolf v. Royal Trust Co.* (1898), 173 Ill. 435, 50 N.E. 1049; *Link Belt Machinery Co. v. Hughes*.) In the instant case, the receiver implicitly adopted the leases since he operated the theaters for at least seven months without rejecting the leases. He also included amounts for rent due on the theaters as unpaid bills of the receivership estate in his reports and, pursuant to court order of October 31, 1977, paid $2400 as "current" rent for the theaters and payment for the water and insurance. Although the receiver challenged the validity of the leases based on Begun's authority to bind Festival, the continued possession of use of the premises was an election to adopt the lease. Without reaching the merits of the issue of the validity of the leases, it is clear that rent and other charges have accrued for the period of the receivership. The trial court made no determination of this amount but stated that if the amount were "mathematically computed" Rossen might owe money to the other parties. This cause must be reversed and remanded for a determination of that amount.

■■ Appellees Toushin and Festival contend that the trial court's refusal to order the return of the $30,000 security deposit and to surcharge appellants the amount they received upon sale of the leasehold is against the manifest weight of the evidence. Whether a portion of the security deposit should be returned depends on the validity of paragraph 41 of the Three Penny lease and whether any portion of the $30,000 had not been earned under the percentage formula of the first lease. The evidence was conflicting on whether paragraph 41 was in the rider when it was signed by all parties or was added later. On remand it must be determined whether the deposit became the lessor's property or whether any portion should be returned or credited to the lessee or the receiver.

■■ Finally, Toushin and Festival seek a surcharge against appellants for their failure to inform the receiver of offers to purchase the leasehold which they received during the receivership and to thereby mitigate their damages. They contend that the trial court's denial of the surcharge was against the manifest weight of the evidence. We disagree for several reasons. First, both leases included a paragraph captioned "Right to Relet," which provided in pertinent part:

> "14. If Lessee's right to the possession of the Premises shall be terminated in any way, the Premises, or any part thereof, may, but need not, be relet by Lessor, for the account and benefit of Lessee, for such rent and upon such terms and to such person or persons and for such period or periods as may seem fit to the Lessor, but

Lessor shall not be required to accept or receive any tenant offered by Lessee, nor to do any act whatsoever or exercise any diligence whatsoever, in or about the procuring of another occupant or tenant to mitigate the damages of Lessee or otherwise, Lessee hereby waiving the use of any care or diligence by Lessor in the reletting thereof; * * *."

By the express terms of the lease, appellants were under no duty to seek substitute tenants and therefore had no duty to communicate any offers to the receiver. Since they breached no duty, they should not be surcharged for the amount of the sale.

■■■ Secondly, failure to mitigate damages is an affirmative defense and must be pleaded and proven by the defendant. (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Decatur Cemetery Land Co. v. Bumgarner* (1972), 7 Ill. App. 3d 10, 286 N.E.2d 501.) In the instant case neither the receiver, Toushin, or Festival pleaded the failure to mitigate and they raised it for the first time at the conclusion of the hearing on the rent claim. Toushin and Festival cannot complain that appellants failed to mitigate damages. (See *Rozny v. Marnul.*) Finally, no showing was made that the receiver could have taken advantage of the offers made to appellants or that the prospective purchasers would have dealt with the receiver. In this regard, whether a real opportunity to mitigate damages existed is speculative. The sale of the Three Penny leasehold which appellants consummated included a contingent sale of personal property and fixtures in the theater not included in the lease, which the receiver could not have sold in any event. Since appellees have not shown that appellants had either a duty or an opportunity to mitigate damages, they have failed to prove their affirmative defense. (*Decatur Cemetery Land Co. v. Bumgarner.*) Therefore, we conclude that the trial court's denial of the surcharge was not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is reversed and the cause remanded with directions to determine the amounts of rent due to appellants for the period of the receiver's occupancy and any setoffs or cross-claims of the appellees arising out of the security deposit, and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

LORENZ and WILSON, JJ., concur.