SIXTH DIVISION

August 30, 2002

Nos. 1--00--3215)

     1--01--0321)

UNITED STATES FIDELITY AND GUARANTY     ) Appeal from the

COMPANY, a Maryland Corporation, ) Circuit Court of

FIDELITY AND GUARANTY LIFE INSURANCE ) Cook County.

COMPANY, a Maryland Corporation, USF & G)

REALTY ADVISORS, INC., a Maryland Corpo-)

ration, and CHARLES R. WERHANE, as )

Trustee, )

) 

Plaintiffs, )

)

v. )

)

OLD ORCHARD PLAZA LIMITED PARTNERSHIP, )

an Illinois Limited Partnership, LP ) 

EQUITY ASSOCIATES LIMITED PARTNERSHIP, a)

Delaware Limited Partnership, and )

LA SALLE PARTNERS ASSET MANAGEMENT )

LIMITED PARTNERSHIP, a Delaware Limited )

Partnership, )

)

Defendants ) No. 92 CH 6435

)

(Brunswick Corporation, a Delaware Cor- )

poration, )

)

Intervenor and Plaintiff-Appellee, )

)

)

Old Orchard Park Fidelity Associates )

Limited Partnership, an Illinois Limited)

Partnership, Diverse Real Estate )

Holdings Limited Partnership, f/k/a LP )

Equity Associates Limited Partnership, a)

Delaware Limited Partnership, S & S )

Equities, Inc., an Illinois Corporation,)

Lakewood Equities, Inc., an Illinois )

Corporation and Old Orchard Park Fidel- )

ity Limited Partnership, a Maryland )

Limited Partnership, ) The Honorable

) Lester D. Foreman,

Defendants-Appellants). ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

This case is before us a second time.  In 
United States Fidelity & Guaranty Co. v. Old Orchard Plaza Limited Partnership
, 284 Ill. App. 3d 765 (1996) (
USF&G I
) we held, 
inter alia
, that the allegations in Brunswick Corporation's (Brunswick) second-amended complaint alleged facts sufficient to state a claim that Jerry Burin, a court-appointed receiver (Reciever), adopted a lease under which Brunswick was a lessee and, according to Brunswick, under which it was entitled to a $2 million termination payment.  We reversed the trial court's dismissal of the complaint and remanded for a trial on the issue of whether Burin in fact adopted the lease.  

On remand, Brunswick amended its complaint to substitute Old Orchard LP in lieu of Burin based upon an April 5, 1995, unopposed order entered by the trial court which discharged Burin and which, according to Brunswick, assigned to Old Orchard LP the lease at issue.  After a two-day bench trial, the trial court entered judg-ment in favor of Brunswick and against Old Orchard LP for the $2 million termination payment, less amounts for real estate taxes owed by Brunswick, together with prejudgment interest for a total judgment of $2,459,981.06.  The trial court also awarded Brunswick a judgment for attorney fees and costs of $521,708.91.

Old Orchard LP filed a timely notice of appeal.  The follow-ing issues are before the court:  (1) whether the trial court's conclusion that the Receiver adopted the lease was clearly errone-ous; (2) whether the trial court's finding that Old Orchard LP assumed the Receiver's liability pursuant to the April 5, 1995, order was an abuse of discretion; and (3) whether the trial court's award of prejudgment interest and attorney fees was an abuse of discretion.  For the reasons that follow, we affirm.

I.  STATEMENT OF FACTS

Because the facts preceeding our decision in 
USF&G I
 are relevant to the issues now before us, we restate them here in pertinent part.

On December 14, 1956, the United States Steel & Carnegie Pension Fund (the Fund) leased 32 acres of land and existing improvements, commonly known as Old Orchard Plaza (the Property), to International Minerals & Chemical Corporation (IMC). The lease was to expire on December 20, 2023, if all options to extend it were exercised.

On September 1, 1971, Brunswick acquired the leasehold estate from IMC.  On April 27, 1983, Brunswick entered into a contract to sell its leasehold estate to Equity Associates (Equity).  As con-sideration for the sale of the leasehold, Equity agreed to lease the office space Brunswick occupied at the time back to Brunswick at a below market rate pursuant to a sublease (the Lease).  The Lease provided that Brunswick would occupy the office space through April 1993, at which point it would have an option to extend the term.  The Lease further provided that if Brunswick vacated the premises without having exercised the option, Equity would pay Brunswick a termination payment of $2 million (the Termination Payment).  The Termination Payment is the subject of the instant appeal.

On December 5, 1985, Equity acquired fee simple title to the Property from the Fund.  The Lease with Brunswick remained in effect.  In 1987, Equity sold the Property to LP Equity.  A short time later, LP Equity sold the Property to Old Orchard Plaza Limited Partnership (OOPLP).  Equity, LP Equity, and OOPLP are affiliates created and controlled by LaSalle Partners.

Sometime prior to October 5, 1988, OOPLP sought a mortgage loan on the Property from United States Fidelity and Guaranty Company (USF&G).  On October 5, 1988, USF&G received a letter from its real estate consulting firm, Piedmont Realty Advisers, stating that if Brunswick vacated the premises in April 1993, the landlord would be liable for the Termination Payment.  

On November 30, 1988, Brunswick executed a letter, at USF&G's request, certifying that upon any foreclosure sale or conveyance in lieu thereof, Brunswick would recognize the purchaser as its landlord under the Lease as if such purchaser were the original landlord, "provided, however, that such purchaser shall in no way be liable or responsible for any alleged default by the Landlord pertaining to any period prior to the time that the purchaser acquires actual possession or control of the Property, or any portion thereof."

On January 6, 1989, OOPLP received two mortgage loans on the property from USF&G totalling $23.5 million.  On March 1, 1992, OOPLP defaulted on the mortgages by failing to pay real estate taxes, as required under the loan documents.  On May 8, 1992, USF&G accelerated OOPLP's total indebtedness.  On May 12, 1992, Brunswick sent Equity and LaSalle Partners written notice that it intended to vacate the office space on April 30, 1993.  The notice further demanded payment of $2 million upon its vacation.

On July 7, 1992, USF&G filed a complaint in the chancery division of the circuit court of Cook County against OOPLP, LP Equity, Equity, and LaSalle Partners (the LaSalle Partner defen-dants) alleging various fraudulent transfers of funds.  The com-plaint sought assignment of rents and appointment of a Receiver.  It specifically stated that USF&G does not seek a foreclosure "at this time."  On August 5, 1992, the circuit court appointed Jerry Burin as Receiver, and from that date until he was discharged, Burin demanded and received rents and managed the Property.  Brunswick later sent letters demanding the Termination Payment to USF&G and Burin.  All parties denied liability.

On March 8, 1993, Brunswick obtained leave to intervene and filed an intervenor's complaint against the LaSalle Partner defen-dants, USF&G, and Burin.  The complaint sought declaratory judg-ments that the Termination Payment provision was a covenant run-ning with the land, that Brunswick had an equitable vendor's lien on the Property for the unpaid purchase price which took priority over any mortgage liens, that Burin had implicitly adopted the Lease, that the Termination Payment was an ordinary operating expense of Receivership, and that USF&G was a mortgagee in pos-session.

On April 26, 1993, USF&G settled its claim against the LaSalle Partner defendants and agreed to the following terms:  (1) USF&G would dismiss the claim; (2) of the nine parcels constituting the Property, USF&G would release its interest in parcels 1 through 6 and foreclose only on parcels 7 through 9, which contained the Brunswick office space; (3) the LaSalle Partner defendants would assert no defense and consent to the foreclosure; (4) if OOPLP went into bankruptcy, it would consent to lift the automatic stay on the foreclosure; and (5) USF&G reserved indemnity and subrogation rights against the LaSalle Partner defendants for the Termination Payment.  On April 30, 1993, Brunswick vacated the premises. On July 15, 1993, USF&G filed its complaint for foreclosure of parcels 7 through 9.

On May 21, 1993, Brunswick and the Receiver entered into a stipulation which provided in part:

"3.  Brunswick asserts its claim against the Receiver only in his official capacity, and thus seeks to recover from the Receiver only to the extent that the Receiver has rent or other monies in his possession from his operation of Old Orchard Plaza or has control or possession of the real estate which is the subject of the lease or other property which can be used to satisfy Brunswick’s claim.

4.  Brunswick and the Receiver stipulate and agree that the Receiver’s right and duty to use any property in his possession and control to satisfy Brunswick’s claim is condi-tioned upon the Court entering orders direct-ing the Receiver to use said property in such manner.

5.  Brunswick does not seek a money judg-ment against either the Receiver in his personal capacity, or against his agent, The John Buck Management Group arising out of any of the acts or circumstances alleged in Inter-venor's Complaint."

On August 6, 1993, Brunswick amended its complaint to add requests for declaratory judgments that it has a vendor's lien against parcels 7 through 9, which is superior to USF&G's mortgage interest, and against parcels 1 through 6.  USF&G filed a motion to dismiss for failure to state a claim.  On August 25, 1993, the cir-cuit court granted the motion, finding (1) the Termination Payment provision was not a covenant running with the land because it did not touch and concern the Property and there was no privity between Brunswick and USF&G; (2) Brunswick was not entitled to a vendor's lien; (3) USF&G was not a mortgagee in possession; and (4) Bruns-wick was estopped from asserting a claim for the Termination Pay-ment against USF&G by its letter of November 30, 1988.  On Septem-ber 22, 1993, Brunswick filed its first notice of appeal.

On October 5, 1993, Brunswick received an invoice from Burin demanding payment for Brunswick's alleged share of 1992 real estate taxes on the Property.  On December 7, 1993, Brunswick filed a second-amended complaint against the LaSalle Partner defendants and Burin, containing two counts.  Count I sought declaratory judgments that the LaSalle Partner defendants were each personally liable for the Termination Payment and that Brunswick had a vendor's lien against the Property.  Count II sought declaratory judgments that Burin had adopted the Lease and was liable for the Termination Payment as successor to the landlord's interest, that the Termina-tion Payment was an ordinary operating expense of Receivership, and that Burin's nonpayment of the Termination Payment was a material breach of the lease that entitled Brunswick to set off any of its further obligations.

The circuit court granted USF&G leave to intervene as defen-dant.  On December 28 and 29, 1993, USF&G, the LaSalle Partner defendants and Burin each filed motions to dismiss Brunswick's second-amended complaint.  On March 23, 1994, the circuit court granted USF&G's and Burin's motions in their entirety.  The court found that Burin never adopted the Lease or succeeded the landlord in interest, and that nonpayment of the Termination Payment did not excuse Brunswick from paying real estate taxes.  With respect to the LaSalle Partner defendants' motion, the circuit court granted Brunswick leave to file a third-amended complaint 
instanter,
 in which count I alleged a vendor's lien and count II alleged personal liability for the Termination Payment.  The court then dismissed count I, citing its earlier ruling on the vendor's lien issue, and sustained count II.  The next day, Burin filed a counterclaim against Brunswick for unpaid real estate taxes due under the Lease.

Also, on March 24, 1994, Brunswick filed its second notice of appeal.  On May 23, 1994, this court entered an order consolidating the two appeals.

In the meantime, with Brunswick's appeal pending, USF&G pro-ceeded with the foreclosure.  The trial court entered judgment of foreclosure on March 23, 1994.  A sheriff’s sale of the Property took place on November 9, 1994.  USF&G was the bidder and for a $6,750,000 bid received the certificate of sale.  On December 20, 1994, USF&G assigned the notes, mortgage, loan documents and claims and defenses in the litigation to Old Orchard Park Fidelity Associates Limited Partnership (Old Orchard LP).  On January 6, 1995, the court entered its order confirming the sheriff’s report of sale and ordering execution of a deed to Old Orchard LP.

As of March 1995, Burin had completed his final report and the Receiver’s estate consisted of $8,184.09.  On March 27, 1995, Old Orchard LP filed a motion to discharge the Receiver.  On April 5, 1995, the court entered an order drafted by Old Orchard LP’s counsel and agreed to by Old Orchard LP, Brunswick and the Receiver (the April 5 Order).

The April 5 Order provided in pertinent part:

(d)  Jerry Burin is hereby authorized to assign to Old Orchard LP all leases entered into by the Receiver in connection with the Property;

(e)  Jerry Burin is hereby authorized to enter into an assignment with Old Orchard LP, which shall be legally valid and binding for all purposes, assigning any and all claims by or against the Receiver relating to the Pro-perty, including but not limited to:

(i) the Receiver’s Counterclaim against Brunswick Corporation for unpaid rent, filed herein on April 13, 1994[.]

(ii) any and all other claims, rights, interests, or causes of action relat-ing to the Property."

At the same time they submitted the April 5 Order, Old Orchard LP’s counsel moved for Old Orchard LP to be substituted for USF&G in the circuit court.  Substitution was allowed on April 5, 1995, and, in May 1995, Old Orchard LP was substituted for USF&G in the then-pending appeal.

In October 1996, we delivered our opinion in the consolidated appeal.  
USF&G I
, 284 Ill. App. 3d 765.  With respect to Bruns-wick's claims against USF&G, we affirmed the dismissal.  Before doing so, however, we addressed the issue of whether Brunswick waived its claims against USF&G when it executed the November 30, 1988, letter, which provided:

"Upon any foreclosure sale or conveyance in lieu thereof, *** [Brunswick] shall attorn to and recognize the purchaser of the Pro-perty, or any portion thereof as its landlord under the Lease as if such purchaser were the original landlord thereunder, provided, how-ever, that such purchaser shall in no way be liable or responsible for any alleged default by the landlord pertaining to any period prior to the time that the purchaser acquires actual possession or control of the Property or any portion thereof."

We held that because USF&G was not a "purchaser" that took control of the Property pursuant to a "foreclosure sale," the letter did not constitute a waiver of Brunswick’s claims.

Thereafter, we nevertheless affirmed the trial court’s finding in USF&G’s favor.  We held (1) Brunswick failed to state a claim against USF&G based on a vendor’s lien; (2) Brunswick failed to state a claim that USF&G was a mortgagee in possession; and (3) Brunswick failed to state a claim that the Termination Payment is a covenant running with the land.

We also considered the trial court’s dismissal of Brunswick’s claims against the Receiver and reversed.  We held that the allega-tions were sufficient to state a claim that Burin adopted the Lease.  We also found that Brunswick had a stated claim that, under the material breach doctrine, Burin’s failure to make the Termination Payment excused Brunswick from having to pay further real estate taxes.  Accordingly, we remanded the case for further proceedings.

On March 26, 1998, Brunswick filed its fourth-amended com-plaint for declaratory judgment.  Count I alleged that OOPLP and the other LaSalle Partner defendants, as the owners of the Property and successor to the landlord’s interest, were obligated to make the Termination Payment that had been due on April 30, 1993.  Count II was against Old Orchard LP.  It alleged that the Receiver had adopted the Lease and was responsible for the Termination Payment.  Brunswick further alleged that by reason of the April 5 Order dis-charging the Receiver, Old Orchard LP was the successor to the Receiver and was personally liable for the Termination Payment.

Old Orchard LP moved to dismiss Brunswick’s fourth-amended complaint for failure to state a claim, that motion was denied on October 13, 1998.  Old Orchard LP answered and set forth additional defenses to the complaint.  Brunswick moved for summary judgment against OOPLP and Old Orchard LP, that motion was denied on February 15, 2000.

On June 8, 1999, Brunswick filed its fifth-amended complaint that added as parties the LaSalle Partner defendants, together with OOPLP.  The claims against Old Orchard LP remained unchanged.  On August 1, 2000, the court allowed Brunswick’s motion to enter an agreed dismissal order as to OOPLP and the LaSalle Partner defen-dants.  Pursuant to a "confidential settlement agreement," the court dismissed with prejudice Brunswick’s claims against OOPLP and the LaSalle Partner defendants.

A bench trial as to Brunswick’s remaining claims against Old Orchard LP took place on August 7 and 8, 2000.  The two disputed issues for trial were (1) whether the Receiver adopted the Lease; and (2) the meaning and effect of the April 5 Order.  Brunswick called one witness, its assistant general counsel, Elizabeth McGrail.  Brunswick also read into the record excerpts from the evidence deposition of the Receiver.  Old Orchard LP called two witnesses, Richard Fenton and Carolyn Van Horn, attorneys who represented USF&G and Old Orchard LP.  Their testimony referred to the communications between the parties through their respective counsel before and after the April 5 Order discharging the Recei-ver.

On August 8, 2000, the trial judge ruled.  He concluded that the Receiver adopted the Lease.  He then stated "that the entire determination of the rights of the parties here is dependent entirely on the wording of the April 5
th
 order."  The court con-cluded that the order was unambiguous and assigned to Old Orchard LP all claims by or against the Receiver.  The court then entered judgment against Old Orchard LP for the $2 million Termination Payment, less $188,771 for Brunswick’s share of the real estate taxes.  The judgment also included an award of $648,952.06 for prejudgment interest for a total judgment of $2,459,981.06.  In addition, on January 3, 2001, the court awarded Brunswick attorney fees and costs of $521,708.91.

On September 20, 2000, and on January 17, 2001, Old Orchard LP filed its respective notices of appeal from the trial judgment and the award of attorney fees and costs.  The appeals were consoli-dated by this court.

Old Orchard LP makes the following arguments on appeal:  (1) the November 30, 1988, letter sent by Brunswick to USF&G bars Brunswick from pursuing Old Orchard LP for the Termination Payment; (2) the Receiver did not adopt the Lease and the Termination Pay-ment obligation; and (3) the April 5 Order does not compel a personal judgment against Old Orchard LP for the following reasons:  (a) the Receiver never entered into an assignment with Old Orchard LP; and (b) the May 21 stipulation precludes a personal judgment against Old Orchard LP.  Old Orchard LP also argues that the court erred in awarding prejudgment interest, attorney fees, and costs.

II.  DISCUSSION

A.  The Effect of the November 30, 1988, Letter

Initially, Old Orchard LP argues that Brunswick is estopped from pursuing it for the Termination Payment because Brunswick waived its right to do so upon execution of the November 30, 1988, letter to USF&G.  In the November 30, 1988, letter, Brunswick agreed:

"Upon any foreclosure sale or conveyance in lieu thereof, *** [Brunswick] shall attorn to and recognize the purchaser of the Pro-perty, or any portion thereof as its landlord under the Lease as if such purchaser were the original landlord thereunder, provided, how-ever, that such purchaser shall in no way be liable or responsible for any alleged default by the landlord pertaining to any period prior to the time that the purchaser acquires actual possession or control of the Property, or any portion thereof."

Old Orchard LP argues that because it acquired possession of the Property from USF&G, which purchased the Property through fore-closure, it is not liable for OOPLP’s prior default in fail-ing to pay the Termination Payment.

We disagree.  Brunswick’s claim against Old Orchard LP does not arise out of Old Orchard LP’s status as a foreclosure sale purchaser of the Property.  Brunswick’s claim against Old Orchard LP is based on the April 5 Order which, according to Brunswick, assigned all claims against the Receiver to Old Orchard LP.  Thus, Old Orchard LP’s liability for the Termination Payment arises out of its status as assignee of the Receiver’s liability.  Therefore, Brunswick’s claim against Old Orchard LP is not barred by the letter.

B.  Receiver’s Adoption of the Lease

Old Orchard LP's next argument is that the Receiver did not adopt the Lease.  Because this issue involves a mixed question of law and fact we review it under the clearly erroneous standard.  See 
Carpetland U.S.A., Inc. v. Illinois Dept. of Employment Secur-ity
, No. 91564, slip op. at 14 (June 20,2002).

When this case was before us the first time, we were pre-sented with the question of whether Brunswick’s complaint stated a claim that Burin adopted the Lease.  
USF&G I
, 284 Ill. App. 3d at 767-68.  The complaint alleged as follows:  Beginning in August 5, 1992, Burin managed and controlled the Property and exercised all power and control authorized to the lessor; Burin demanded and received rent payments from Brunswick through April 1993, when the lease expired; Burin demanded and received Brunswick’s allocable share of real estate taxes, even after the Termination Payment became due; and Burin never cancelled or otherwise repudiated the lease.  According to Brunswick’s complaint, Burin was in open pos-session and control of the Property for approximately nine months before the Termination Payment became due.  

We applied the standard set forth in 
Toushin v. Gonsky
, 77 Ill. App. 3d 508 (1979).  We recognized that a Receiver does not become liable under a lease by virtue of his appointment, but has the right to accept or reject a lease.  
USF&G I
, 284 Ill. App. 3d at 774.  We also recognized that acceptance of a lease does not have to be express; it can arise by implication if the Receiver remains in possession beyond a reasonable time to make the election.  
USF&G I
, 284 Ill. App. 3d at 774.  Applying 
Toushin
, we concluded that Brunswick stated a claim that Burin adopted the Lease and remanded.  Thus, on remand, the issue became whether Brunswick could prove those allegations.  

The evidence established that the Receiver reviewed the Lease when appointed.  There is no question that he was in possession for over nine months and that Brunswick paid rent for nine months.  He admitted that his monthly reports to the court showed that he collected $1,375,945.46 from Brunswick.  Further, Burin admitted that he never told Brunswick that he was rejecting the Lease.

Brunswick’s witness, Elizabeth McGrail, testified that Burin demanded rent, an allocable share of real estate taxes, and an allocable  share of common space expenses under the Lease.  She further testified that Burin kept the cafeteria operating and maintained the landscaping and security on the Property.  She also testified that during the 10-month period before Brunswick vacated the Property, Burin never advised Brunswick he was cancelling the Lease.

After hearing the evidence, the trial court declared:

"There is no question in my mind that the Receiver took over the property and operated it as a landlord, did all of those things which a landlord would do; and by virtue of the activity and perhaps even more importantly the duration thereof, I conclude that the Receiver adopted the lease."

Old Orchard LP does not dispute the court’s factual findings; rather, it contends that 
Toushin
 is distinguishable because Burin, unlike the Receiver in 
Toushin
, "refused the Termination Payment and thereby rejected the lease."  To support this argument, Old Orchard LP directs the court to a November 12, 1992, letter, wherein counsel for the Receiver informed Brunswick:

"As a court-appointed Receiver, Mr. Burin obviously has no personal liability with respect to this payment.  To date, income from the Property has been applied only to payment of taxes and other ordinary operating expen-ses, as required by statute.  No funds have been paid to the mortgagee.  Funds on hand now or in the future will be disbursed in accor-dance with relevant statutes and court orders."

The above letter is insufficient to establish that Burin rejected the Lease.  The letter does not deny liability with respect to the Lease; it only denies liability with respect to the Receiver’s personal assets.  It does not say that the Termination Payment will not be paid.  The letter does not overcome the other evidence with respect to the adoption of the Lease; that is, the fact that the Receiver collected over $1.3 million from Brunswick during the nine-month period remaining on Brunswick’s lease.

Accordingly, we find that the trial court’s conclusion that Burin adopted the Lease is not clearly erroneous.

C.  The April 5 Order

After finding that the Receiver adopted the Lease, the trial court stated that it appeared "that the entire determination of the rights of the parties here is dependent entirely on the wording of the April 5
th
 Order," which states that the Receiver is "assigning any and all claims by or against the Receiver relating to the Property."  The court held that the order was unambiguous.  The court stated, "I don’t think that I have heard any evidence that in any way overcomes the statement that all of the claims, by or against the Receiver, were being assigned."  The court then entered judgment against Old Orchard LP for the Termination Payment less $188,771 for Brunswick’s share of the real estate taxes.

Old Orchard LP contends that the trial court's conclusion constitutes an abuse of discretion.

Old Orchard LP asserts that the Receiver never entered into an assignment with Old Orchard LP.  Old Orchard LP argues that because the April 5 Order states that the Receiver "is hereby authorized to enter into an assignment with Old Orchard LP," the order merely permits the Receiver to enter into an assignment; the order itself is not an assignment.  

The trial court disagreed with this argument.  With respect to the mandatory or permissive nature of the word "authorized," it stated, "I am interpreting the word 'authorized' in the sense of being mandatory."  The trial court reasoned that because Old Orchard LP took an assignment of Burin’s April 13, 1994, counter-claim against Brunswick for unpaid rent under the April 5 Order (as conceded by Old Orchard LP’s attorney), it necessarily took an assignment of "all claims."  We agree.  

The claim for the unpaid rent (Brunswick’s share of the real estate taxes) arose under the 1983 lease agreement that Old Orchard LP assumed pursuant to the April 5 Order.  If Old Orchard LP assumed all claims via the Receiver, it should likewise have assumed all liabilities via the Receiver.  As the trial court reasoned:

"[Y]ou can’t take the benefits without taking the detriments or the liabilities, *** if in fact this document unequivocally sets forth that the Receiver’s counterclaim against Brunswick for 188,000 plus dollars being a tax obligation was going with this assignment, I cannot possible see how the liability with respect to the lease Termination Payment did not also move with this assignment."

Old Orchard LP asserts that even if we accept the trial court’s conclusion that Old Orchard LP was the successor to Brunswick’s claim against the Receiver, we find that Old Orchard also received the protection against personal liability promised to the Receiver by Brunswick in the May 21, 1993, stipulation.  The stipulation reflected the Receiver’s assertion that "he cannot be held personally liable to Brunswick for the Termination Pay-ment."  The stipulation also provided that Brunswick "would not seek a money judgment against either the Receiver in his personal capacity, or against his agent."  

We find that the stipulation was not assignable to Old Orchard LP.  A stipulation must be construed as a contract between the parties to it, giving effect to the intent of the parties.  
ITT Abrasive Products Co. v. Lewis
, 12 Ill. App. 3d 83, 86 (1973).  "Where the personal qualities of either party are material to [a] contract, the contract is not assignable without the assent of both parties."  
Martin v. City of O’Fallon
, 283 Ill. App. 3d 830, 834 (1996).  Here, the stipulation was based solely on the "per-sonal qualities" of the Receiver; namely, his legal status as Receiver and his desire to have his personal assets expressly immune from claims against his Receivership.  We reject Old Orchard LP’s argu-ment that because the April 5 Order encompasses the assignment of "all" rights and interests, it necessarily includes the protection against personal liability.  Brunswick never assented to the assignment of the stipulation.

D.  
In Rem 
versus 
In  Personam
 Liability

Old Orchard LP also argues throughout its brief that Brunswick can only recover to the extent of the assets in the Receivership  estate.  We reject this argument.  As argued by Brunswick, the Termination Payment was a full-recourse personal obligation of the landlord.  The Termination Payment provision reads:

"Provided Tenant is not in default under the terms of this Lease, if Tenant does not elect to renew the term of this Lease for (i) the First Extension Term, then Tenant shall receive a payment of $2,000,000.00 upon its vacation of the demised premises ***."

It contains no limiting language.  And as Brunswick asserts, the nature of the liability under the Lease never changed.  The Receiver’s adoption of the Lease did not change the nature of the existing contract rights from 
in personam
 liability to 
in rem
 liability.

E.  Award of Prejudgment Interest

Next, Old Orchard LP argues that the trial court erred in awarding prejudgment interest because there was no "instrument in writing" entered into by the Receiver and Old Orchard LP that could require prejudgment interest.  We disagree.

Section 2 of the Interest Act provides that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing."  815 ILCS 205/2 (West 1998).  As Brunswick argues, the "instrument in writing" in this case was the Lease.  See 
Montgomery Ward & Co. v. Wetzel
, 98 Ill. App. 3d 243, 250 (1981) (a lease is an instrument of writing within the contemplation of the Interest Act).  When the Receiver adopted the Lease he became bound by its terms and his liability thereunder was assigned to Old Orchard LP via the April 5 Order.  

Accordingly, we find that the trial court correctly awarded Brunswick 5% interest from April 30, 1993.

F.  Award of Attorney Fees

Finally, Old Orchard LP argues that the trial court erred in awarding attorney fees and costs to Brunswick.  Once again, we dis-agree.

Article 29, section 10, of the Lease provided in part:

"In the event of any litigation or arbi-tration between Tenant and Landlord to enforce any provision of this Lease or any right of either party hereto, the unsuccessful party to such litigation or arbitration shall pay to successful party all costs and expenses, included reasonable attorneys’ fees, incurred herein."  

"[I]n 'fee-shifting' agreement situations or where a contract pro-vision provides for fees, the trial court *** must conduct a rea-sonableness evaluation.  It also makes its reasonableness determi-nation based on various factors and its decision will not be disturbed unless there has been an abuse of discretion."  
In re Pine Top Insurance Co.
, 292 Ill. App. 3d 597 (1997).

As noted by Brunswick, a fee petition must comply with the requirements of 
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978 (1987).  
Kaiser
 requires the party seeking fees to provide sufficient evidence from which the court can render a deci-sion as to their reasonableness.  
Kaiser
, 164 Ill. App. 3d at 977-78.  Brunswick provided all of the attorney time records for this action, affidavits, and an affidavit of an independent expert who stated that the fees were reasonable under the circumstances.  

The trial court has "broad discretionary powers" in awarding attorney fees (
Wildman, Harrold, Allen & Dixon v. Gaylord
, 317 Ill. App. 3d 590 (2000)).  There is no basis in the record to concluded the trial court abused its discretion.

III.  CONCLUSION

Accordingly, we hereby affirm the trial court's order of August 10, 2000, that entered judgment in favor of Brunswick and we affirm the trial court's order of January 3, 2001, that awarded Brunswick attorney fees and cost.

Affirmed.

GALLAGHER, P.J., and O'MARA FROSSARD, J., concur.